## William Davy *against* Richard S. Hallett.

By a valued policy on freight, "at and from" one port to another, and " at and from thence" back to the original port, for which a premium is paid, double to that which would be demanded for the outward voyage the freight to the full amount of the valuation is covered on each voyage, and the insured, on a capture on the return voyage, is entitled to recover the full amount of his policy, without making any deduction for the freight received on the outward risk. On a valued policy on freight, if there be an inchoate right to some, and the transaction *bona fide*, the value cannot be enquired into. If a ship owner insure his vessel and freight

ASSUMPSIT upon an insurance on the freight of the sloop *Hannah*, valued at 2000 dollars, " at and from *Philadelphia* to *Omoa* "and *Golfo Dulce*, and at and from thence to *Philadelphia*," at a premium of twenty-two and a half per cent. The facts as they appeared in the case made were these—In *August* 1800, the vessel sailed on the voyage insured, and arrived in safety at *Golfo Dulce*, having earned freight to the amount of 2000 dollars. She there took in a return cargo for *Philadelphia*, the freight of which was equal to two thousand dollars more, and sailed on her homeward voyage, but was, on the very next day, captured by a *British* man of war, who carried her into *Belize* in the *Bay of Honduras*. There she remained for some time, when her crew were taken out of her, and she was sent under charge of a prize master to *Jamaica* for trial. Whilst in possession of the captors, an abandonment was duly made of the vessel, cargo and freight, to the respective underwriters. Those on the vessel and cargo accepted the abandonment of the interests they had severally insured; but the defendant, who had subscribed the policy on the freight, refused. The sloop and her cargo were afterwards proceeded against in the vice admiralty, and by a decree of that court acquitted, but the claimants condemned in costs to the captors. This sentence being appealed from, the sloop and her cargo were, in conformity to the practice of the admiralty, ordered to be appraised, and restored to the claimants, on their giving security to account for the value, in case the sentence should be reversed. The vessel and cargo were accordingly appraised in pursuance of the decree, security given by two sureties, who took possession of both, and sent them to their correspondents, Messrs. *Elliston* and *Perot* of *Philadelphia*, in whose possession they were at the commencing the present action. The plaintiff, however, on the arrival of the vessel at the *quarantine ground*, agreed with the underwriters upon her, to be substituted in their place, and to defend

the appeal at his own risk and expence, on their paying him fifty per cent. In consequence of this, the money was paid by the insurers on the sloop, who executed a power of authority to *Davy*, constituting him their agent and attorney, to defend the appeal in their names. By virtue of this authority the plaintiff had, on discharging the advances and expenses on account of the vessel, got possession of her at the time of trial, and had received 2000 dollars, the amount of her return freight. It was admitted the premium on the outward voyage only, would have been about one half of that paid, and that the decree of the vice admiralty had been recently confirmed, but without costs. A verdict being taken for 2245 dollars it was agreed, that if the court should be of opinion the plaintiff was entitled to recover as for a total loss, the proportion of freight earned, which the defendant might be entitled to, if any, should be deducted, and the account adjusted. In case it should be thought the plaintiff was entitled to only a partial loss, the same to be in like manner adjusted, on such principles as the court might direct, with liberty to either party to turn the facts of the case into a special verdict.

*Hoffman* for the plaintiff. The first question is as to the true construction of the policy. The defendant contends the valuation is to be thus interpreted; one thousand dollars out, and one thousand home; making, in the whole, the sum of two thousand dollars; one thousand of which was earned on the arrival at *Golfo Dulce*. We insist that the homeward and outward freight are valued by the instrument at 2000 dollars each. The amount of premium paid is for 2000 dols. round. The only cases at all analogous to this, are insurances on goods out and home. In those the valuation extends to both voyages.* The second point will depend on the right to abandon. That was complete; for the loss continued total not only then, but down to the very time of action brought. The assured therefore, at the period of entering into his agreement with the underwriters on the ship, had divested himself of all his interest in the several subjects he had insured. They were fully transferred to the various insurers; and therefore, on the principle of the *United Insurance Company* and *Lenox*,† those on the vessel were entitled to the freight earned after the capture. In this situation the plaintiff, by a fair sale to him, and by relinquishing one half of his just claim, becomes a *bona fide* purchaser of the rights of the underwriters,

NEW-YORK, May, 1805.

William Davy v. R. S Hallet.

with two sets of underwriters, and on a capture, abandon first to those on the vessel and then to those on the freight, after which he takes 50 per cent of his claim on the underwriters on the vessel, and in payment of the other 50, an assignment of their rights in the vessel, he will be entitled to receive the freight, which they would have been entitled to, and to recover, in his own right, from the insurers on the freight, the full amount of his policy, deducting the pro rata freight, earned, previous to the abandonment, in the voyage on which captured.

* This is the foundation of what are termed short interests. See 1. *Lex Mer. Amer.* 345.

† See the special verdict in this case, and the reasons of the counsel, on both sides

C

NEW-YORK,
May, 1805.

William Davy
v.
R. S Hallett.

in the court of errors   1 *Lex Mer. Amer.* 397.

on his vessel. In this capacity, and by a power from them he receives the freight due to the then owners. He now applies to the defendant in his own right, for a loss on a policy to himself. The case states that the proportion of freight to which the defendant may be entitled, shall be deducted from the amount of the verdict. It is not meant however, that there shall be a set-off, for that cannot be of what arises after suit commenced. It is introduced only to give the court an opportunity of deciding what *pro rata* freight the defendant may be entitled to, and up to what time.

*Boyd and Pendleton*, contra. There can be no doubt that in conscience the plaintiff is not entitled to recover. He has, allowing his own interpretation of the contract, already received the 2000 dollars insured. But the policy was for one entire risk out and home, amounting to two thousand dollars in the whole. This could not be apportioned. *Loraine* v. *Tomlinson, Doug.* 585. Nor could the premium,* which was for one gross sum. This is one criterion to judge of the durability of the engagement. As therefore the contract was entire, when the abandonment was made, it necessarily transferred the outward freight which had been earned. Instead of this, an attempt is made to confine it, to what was acquired between the time of sailing from *Golfo Dulce* and the capture. That is, just one day's freight. But we contend the assured, by his agreement with the underwriters on the ship, placed himself in his original station, and, having received the full freight, stands, as respects the defendant, exactly as if the capture had never taken place. If the assured has, by the manner in which he has conducted his abandonments, deprived us of the freight we have insured, he would be liable to us in an action against him, to the amount of what we might pay. The court therefore will not sanction a recovery in this action, merely to give the defendant a recourse against the plaintiff in another. In *Thompson* v. *Rowcroft*, 4 *East* 34, under a similar abandonment of all the interests insured after a capture, it was held that the insurer on freight might, after payment of a total loss to the insured, recover from him the amount of freight which he had received. It is true in this case, there was an express agreement to pay it over. But that is no more, as we contend, than what the law implies. For whatever is received during the voyage insured, is, after abandonment, to be carried to the credit of the underwriter. 2 *Emer.* 222. As

* Whether a premium can be apportioned, depends on whether the risk be at any period suspended, so that the underwriter can say "I am free," and upon the usage of the trade. See *Stevenson, v. Snow,* 3 *Burr.* 1237. *Long* v. *Allen Park* 390. *Bermon* v. *Woodbridge, Doug* 781 *Meyer* v *Gregson, Park* 389 *Tyrie* v. *Fletcher, Cowp.* 666.

to the principle of set-off relied on, it cannot be applicable in the present discussion. The case was drawn up to submit all the rights of the parties to the court.

*Harison* in reply. In some respects the insurance may be considered as indivisible. Had a loss taken place at an early period, there would have been no return of premium. But the contract was, in effect, on two separate voyages, valued, during the whole of each voyage, at 2000 dollars. Had it been on the cargo, and the vessel had arrived at her outward port, the return cargo would have been substituted for the former, and, in case of loss, the anterior voyage would never have been considered. So here the reasoning is the same. The full amount therefore, is what we have a right to claim, without affording to the underwriter any title by our abandonment, to what has been earned in the first voyage. With respect to the deductions, they can be only such, as the defendant was entitled to, at the time when by the abandonment they were fixed—The general right, of the plaintiff to recover, cannot be affected by what he has received in *auter droit ;* as the substitute of the insurer on the vessel. He is a *bona fide* purchaser from them, and whether he paid by cash, or a release of a debt due to himself, is immaterial. The freight due to the underwriters on the ship after the capture, was not *that* which arose out of the original contract between the shipper and plaintiff, but sprung from a meritorious consideration, on a new contract arising out of the old one. *Curling* v. *Long,* 1 *Bos. and Pull.* 637. If any apportionment is to be made of the freight, it must be by deducting the amount of what would be due for one day. *Luke* v. *Lyde,* 2 *Burr.* 888.

*Per curiam,* delivered by KENT, C. J. This is a case of a valued policy upon freight, and the valuation becomes a very material fact in the consideration of the cause. The plaintiff was owner of vessel, cargo and freight, and had them all fully insured, and the vessel being captured after the return voyage had commenced, he duly abandoned all the subjects to their respective insurers. The insurance was for two thousand dollars in value, of freight ; and if, at the time of the total loss, there was an inchoate right to a freight to the amount of the insurance, the plaintiff must be entitled to recover. This principle was fully established in the cases of *Montgomery* v. *Eggington,* 3 *D. & E.* 362, and *Thompson* v. *Taylor,* 6 *D. & E.* 478. In the present instance, there was, when the vessel was captured, an in-

NEW-YORK, choate freight attached, equal to 2000 dollars. There was some
May, 1805.
freight already earned when the capture took place, but the
William Davy amount of it becomes immaterial, as the valuation in the policy
v.
R. S. Hallett. precludes inquiry into the value, and this valuation is to be ad-
hered to, if the case be fair and honest between the parties, not-
withstanding events in the course of the voyage, may render the
loss even advantageous to the insured. *Shawe* v. *Felton*, 2 *East*
109. It is sufficient if there be freight at risk, equal to the sum
insured, when the loss happens, and that some freight has been
already earned for the insured. If we were to sustain an inquiry
into the value of the freight, it would be doing away the effect of
the valued policy.

Seven objections have been stated against the plaintiff's right of
recovery in this case, but it appears to me that they are capable of
a sufficient answer.

The abandonment of the vessel took away from the insurer on
the freight, the *spes recuperandi*, or the chance of an ultimate re-
covery of the subject; because, as between the insurers on the
ship and freight, the claim of the insurer on the ship to
the freight, must be admitted to preponderate; and this
seems to have been the opinion of Lord *Ellenborough* in the re-
cent case of *Thompson* v. *Rowcroft*, 4 *East* 34. The abandonment
of the ship did not affect the plaintiff's right to a proportion of
the freight on the return voyage. This was so considered in the
case of *Lenox* v. *the United Insurance Company*, which was finally
determined in the court for the correction of Errors in 1801 ; and
although the court was divided in that case, and the majority of the
bench did not concur in any opinion on the merits of the cause, I am
not now disposed to question the correctness, and much less the
authority of that decision. It was determined in that case, that
upon abandonment of the vessel, the owner of the freight being
also owner of the ship, did not thereby abandon his freight *in
toto*, but that he retained a certain part to be apportioned *pro rata
itineris*, and, consequently, to be carried down to the time when the
loss happened. The insured therefore upon the vessel, as be-
tween him and his insurer, still retained his right to a ratable
freight, and if he has had the precaution to have his freight in-
sured, I do not see why he may not resort for indemnity to the
insurer upon the freight. As long as vessel and freight are re-
garded in our law as *distinct* subjects of insurance, the inconve-
nience that I have suggested, which falls upon the insurer on

freight, seems to be inevitable. There is in this case conflicting rights, and some one must yield. The owner of ship and freight, is authorized to insure each of them distinctly, and the law must have intended, that each of the policies should have a full and effectual operation, according to the established principles of insurance. It would be to maintain a paradox to contend, that by an abandonment of the ship in such a case, the remedy upon the policy upon the freight was forever gone. One contract cannot be destroyed by the operation of another contract *inter alios*. The insurer upon freight must therefore submit to a total loss in every such case, with the exception of the ratable freight which does not go with the abandonment. The abandonment of the ship, is an act in which he has no direct concern, and his contract with the insured contains no control of that act. The loss of any chance of recovery of freight is a consequence *incidental* merely, to the abandonment of the ship, and arises from meeting with the paramount claims of the insurer on the ship; and he must be left to provide against it by some special contract with the insured, as was done in the case of *Thompson* v. *Rowcroft*.

Another objection to the recovery in this case is, that freight, to the amount of 2000 dollars, had already, during the course of the same voyage, been earned and received by the plaintiff. But the present insurance was not upon the totality of freight for the whole voyage, but upon so much freight *in that voyage*, as would amount to 2000 dollars. The observation, therefore, of *Emerigon*, 2 *Vol.* 222, does not apply, when he says, that the freight received by the insured in the course of the circuitous voyage, is received on account of the insurer, if by perils an abandonment becomes necessary. This author is there speaking of insurances upon the whole subject for an entire voyage. The present case is analogous to that cited in 2 *Valin* 87, and 2 *Emer.* 39, 40, in which one caused an insurance to be made to the amount of 1000 livres upon goods, on board a vessel from *America* to *Marseilles*. The vessel sailed with a cargo to the amount of 3000 livres, and discharged two thirds thereof at *Cadiz*, leaving goods on board for the remainder of the voyage to the amount of the insurance. It is the opinion of these authors, and the same is confirmed by *Pothier*, that the policy was not thereby reduced two thirds in value, but operated still upon all the cargo on board, to the amount of the 1000 livres. To apportion the loss and gain in this case, so as to make the gain of one

NEW-YORK, moiety of the outward freight enure to the insurer, and the loss
May, 1805. of one moiety of the homeward freight to fall upon the insured,
would be an arbitrary rule, and would not give the plaintiff his

Garrit Post & just indemnity. It would be changing the legal operation of this
James La Rue
v. contract, and making it an insurance of one moiety only, of the
John Neafie. outward, and one moiety of the homeward freight, instead of an
—————— insurance to the amount of the valuation on so much freight
pending, when the loss arose. The payment of the double pre-
mium is a pretty sure index to the intent of the parties, that the
policy should attach on the outward, or homeward freight, accord-
ing to events. The policy was to be valid and operative, as long
as there was aliment to keep it alive.

With respect to the subsequent contract between the plaintiff
and the insurer on the vessel, it appears to me not to have any
influence on the present demand. It was not a waiver of the
abandonment, but a fair re-purchase of the right of redemption
of the vessel, for a valuable consideration, and I think the pre-
sent question ought to be decided in the same manner, as if no
such contract and substitution had taken place. The abandon-
ment had been accepted, and the right of property in the vessel
absolutely vested in the insurer.

My opinion accordingly is, that the plaintiff is entitled to re-
cover as for a total loss, subject nevertheless to a deduction of
the small ratable freight, which did not pass with the abandon-
ment of the ship, to be adjusted according to the principles
established in the case of *Lenox* v. *the United Insurance Company*,
and such is the decision of the court.

LIVINGSTON, J. having been concerned, gave no opinion.