## Livingston *against* The Columbian Insurance Company.

THIS was an action on *an open policy* of insurance, on *freight*, of goods laden on board the ship *Olive*, on a voyage from *New-York* to the river *La Plata*, and at and from thence to a port in *Europe*. The sum of 18,000 dollars was insured at a premium of 12 1-2 per cent. The policy was dated the 17th day of *September*, 1801.

At the trial, the preliminary proofs and policy were admitted, and also, that the plaintiff abandoned on the 29th *June*, 1802. It was proved, that the freight of such a ship as the *Olive*, would have been worth 18,000 dollars, for such a voyage. On the 10th *August*, 1801, the ship, which belonged to the plaintiff, was at *Bourdeaux*, where she was chartered by an agent of the plaintiff, to Mr. *Hammon*, of *Hamburgh*, and by the charter-party she was to sail from *Bourdeaux* to *New-York*, from thence to *Rio de la Plata*, and from thence to *Hamburgh*. Eighteen thousand dollars were to be paid for the whole voyage, half at *Rio de la Plata*, and the other half at *Hamburgh*, or other port of discharge. Sixty lay days were allowed at *Rio de la*

*A vessel and freight were insured by the same underwriters, by two different and open policies of insurance, on a voyage from N. York to the river La Plata, and at and from thence to a port in Europe. The ship arrived at Buenos Ayres on the 13th Feb. 1802, under a charter-party, for freight, and delivered the cargo, and the master received a part of the freight money. The ship was detained by an embargo, and other delays, until the 1st October, 1802,*

when she sailed for *Havre*, in *France*, and arrived there in *December*, 1802. An abandonment of the ship and of the freight was made at the same time, but not accepted. In an action on the policy on the *freight*, it was held, that the plaintiff was entitled to recover as for a total loss. Freight is a distinct subject of insurance, and a previous abandonment of the ship to one insurer, will not prevent the insured from recovering the *freight* insured by another. Whether the abandonment of the ship deprives the insurer of freight of his salvage, and whether the insurer on the ship is to account to the insurer of the freight, for the freight earned subsequent to the abandonment; *Quere.*

*Plata.* The ship sailed from *Bourdeaux*, and arrived at *New-York*, under the charter-party. Before she left *New-York*, the charter-party was ratified by the agent of Hammon and the plaintiff, on the 6th *October*, 1801, with some alterations. Ten additional lay days were to be allowed at *Rio de la Plata*, and half the freight to be paid at that place. The ship sailed on the voyage insured, on the 13th. *October*, 1801, and arrived at *Buenos Ayres*, on the 13th *February*, 1802. The cargo was delivered to the supercargo, in a few days after her arrival; and the captain received about 4,000 dollars, in part of the freight due at *Buenos Ayres*, and took security for the residue. There was an embargo at *Buenos Ayres*, in *March*, 1802, on all merchant vessels, which continued until the 1st *October*, 1802. In the beginning of *August*, the captain had leave to load, but did not obtain leave to depart, nor did he depart till the 1st *October*, when he sailed with a cargo for *Havre* in *France*, and arrived there in *December*, 1802, and delivered his cargo according to the charter-party, and received the freight for the same, as well as the balance of freight due at *Buenos Ayres*.

A suit was instituted at *Havre*, in the name of the plaintiff, against Mr. *Hammon*, to recover damages for the detention of the vessel at *Buenos Ayres*, by the embargo, which suit was determined against the plaintiff, on the ground that the vessel was detained by an embargo. The balance of freight due at *Buenos Ayres*, was not received until after the suit. The captain laid out his freight money in purchasing goods in *France*, with which, and some other goods on freight, he arrived at *New-York* with the ship in *April*, 1803; and on the 21st *April*, 1803, the plaintiff informed the defendants of the arrival of the ship, and that the first moiety of the freight had been paid.

By his instructions from the plaintiff, the captain was not to deliver the cargo at *Buenos Ayres*, until he had received half the freight, or the same was safely secured; he was also directed to receive the demurrage before he left *Buenos Ayres*. If the freight was paid, has was to invest the amount in merchandise, and ship it to *New-York*.

The captain wrote from *Buenos Ayres* to the plaintiff, the 28th *April,* 1802, that the supercargo refused to pay the freight without a deduction, and that the cargo was damaged and would not pay the freight. On the 10th *May,* 1802, he again wrote that the supercargo would neither pay freight nor demurrage, but insisted on a deduction, on account of the peace. In *November,* 1802, the plaintiff wrote to *France,* that in *August,* the ship was in *Buenos Ayres,* and, as far as he could learn, without any cargo on board.

ALBANY,
Feb. 1808.

Livingston
v
Columbian Ins.
Company.

One witness testified, that the embargo commenced in *January,* 1802, and continued until the 15th *March,* and that it was again renewed. It was afterwards decreed, that all vessels, not exceeding 500 tons burthen, and which had arrived before the 14th *April,* should be at liberty to load after three months. On the 26th *July,* 1802, there was no general embargo, but only insuperable difficulties and delays.

It appeared, that the defendants underwrote an open policy of insurance for the plaintiff, on the ship, for 10,000 dollars, on the same voyage ; and that on the 29th *June,* 1802, the plaintiff abandoned both the vessel and freight; but that neither abandonment was accepted. In a suit brought on the policy, on the ship, a verdict was found for the plaintiff for a total loss, the question whether there was an embargo or not, having been left to the jury.

It was admitted, that on the 29th *June,* 1802, an embargo existed at *Buenos Ayres.*

A verdict was taken for the plaintiff as for a total loss, subject to the opinion of the court. The adjustment of the balance, in case of either a total or partial loss, was to be made by persons to be appointed by the court.

*Hoffman,* for the plaintiff. The embargo is a peril within the policy, and the insured may abandon and recover for a total loss.[*] To recover on a policy, on freight, nothing more is necessary, than that the owner's right to the freight had commenced ; that is, where the ship has actually begun to earn freight.[†] The moment the ship sails on the voyage, there is an inception of the contract

[*] *Marshall,* 488.

[†] *Marshall,* 76

ALBANY,
Feb. 1808.

Livingston
v.
Columbian Ins.
Company.

\* 6 *Term*, 478.
† *On Insurance*, 36 *a*.
‡ 7 *East*, 400.

for freight. It was so decided in the case of *Thompson* v. *Taylor*,\* though it is not there said, that it was an open policy ; but *Parke*† expressly states it to have been an open policy. In the case of *Horncastle* and others v. *Stuart*,‡ which is perfectly analogous to the present, it was held, that the charter-party made an entire contract, and that the policy attached at *Dominica*, while the vessel was delivering her *outward* cargo, though no part of the *homeward* cargo was shipped.

The right to freight, in this case, for the whole voyage, attached the moment the vessel sailed from *New-York*. It was this inchoate right to freight, that the defendants insured, and which they engaged should not be defeated, by any of the perils mentioned in the policy. It makes no difference, whether the policy was *open* or *valued*, or whether there were goods on board or not at the time, provided the policy attaches by the inception of the voyage.

It may, perhaps, be said, that the plaintiff, having abandoned the ship, had no right to claim the freight ; but, notwithstanding the *English* adjudications on this point, it has been differently decided in this court.§ In a case like the present, of a *technical* total loss, by *embargo*, no question as to *pro rata* freight can arise, or enter into the calculation of the total loss.

§ 3 *Caines*, 16.
1 *Johnson*, 433.

*C. I. Bogert* and *Harison*, contra. It has been decided, that after an abandonment of the ship, all subsequent earnings belong to the insurer on the ship ; and it would be unreasonable to say, that the insurer, to whom those earnings have been ceded, should afterwards be obliged to pay the insured, in an action on the freight policy. In *England*, the subject has been fully discussed, and it is settled,¶ that by an abandonment of the ship, the insured loses all claim on the insurer, for the freight insured. In the case of *Davy* v. *Hallett*,\*\* the point was not fairly before the court. It is true, that in *Mumford* v. *Hallett*,†† which was a case of insurance on profits, the court seemed to consider it as analogous to an insurance on freight. But another question of importance arises in this case ;

¶ 4 *East*, 34.
5 *East*, 388.
3 *Bos.* & *Pull.* 479.
\*\* 3 *Caines*, 16.
††1 *Johnson*, 433.

was there a right to freight, on which the policy could attach, at *Buenos Ayres?* The risk or voyage, in this case, was divisible.* By the charter-party, 9,000 dollars were to be paid at *Buenos Ayres*, and the residue on the delivery of the homeward cargo. On the 29th *June*, there was no cargo on board, nor any ready to be shipped. The earning of freight must be prevented by some of the perils mentioned in the policy, and not by the acts of the party. In all the cases cited, the loss of freight was not occasioned by any act or neglect of the party, but by the perils described in the policy. The cargo must be on board, or ready to be shipped.† Here half the freight had been earned and paid. The vessel lay a considerable time waiting for a cargo, which the merchant at *Buenos Ayres* was unable, or unwilling to provide. There was no interruption or delay occasioned by the embargo; and *non constat*, that the vessel could have sailed a day sooner, if there had been no embargo. The plaintiff ought to have shown that a cargo was on board, or ready to be shipped, at the time of the abandonment. Though in all cases, the risk may not be divisible, yet, where there are separate cargoes, and separate freights, the voyage, as it respects the abandonment, may be considered as divisible.

*J. Radcliffe*, in reply, contended, that the right of abandonment, as to the distinct interests on separate policies, had been well settled by this court, in the cases of *Davy* v. *Hallett*, and *Mumford* v. *Hallett*, and that any other rule, where the different interests were allowed to be insured, would be unjust and absurd. In the present case, the defendants were insurers of both vessel and freight. The cases, as to a division of the voyage or risk, relate merely to a return of premium. Here was a contract for an entire voyage, and an entire freight. The vessel arrived in *February*, the embargo was laid in *January*, and renewed again in *March*. By the charter-party the vessel was allowed sixty lay days, which had not expired when the embargo took place, so that no cargo could have been put on board, had it been ready. It is evident, from the

ALBANY,
Feb. 1808.

Livingston
v.
Columbian Ins.
Company.

* *Marshall*,
192. 564.

† *Marshall*,
192. 1 *Bos. &*
*Pull.* 172.

suit in *France*, relative to the demurrage, that the detention was considered as occasioned by the government of *Buenos Ayres*, and not by the act of the party. By the rule established in this court, the abandonment has relation back to the commencement of the voyage. The plaintiff may, therefore, claim a total loss of the whole freight, deducting only the amount actually received.

KENT, Ch. J. delivered the opinion of the court. This was an insurance for an entire voyage, from *New-York* to the river *La Plata*, and from thence to *Europe*. The voyage was not divisible, and the risk had clearly attached on the whole freight, at the time of the abandonment. The charter-party gave an entirety to the contract of freight. The cases of *Thompson* v. *Taylor*, and of *Horncastle* v. *Stuart*, (6 *Term*, 478. 7 *East*, 400.) are in point, and decisive, that the risk on the whole freight had attached, when the alleged peril took place.

That there was an embargo or detention, arising from the act of the *Spanish* government, at *Buenos Ayres*, and that the same existed when the abandonment was made, is a fact, which I do not think is to be drawn in question, upon the consideration of the present case. If it was really a doubtful point, it ought to have been distinctly submitted to the jury upon the trial. The case, in one part of it, asserts the existence of the embargo, and we have no reason to question the verdict upon this ground.

These two points, viz. the commencement of the risk, and the existence of the embargo, being established, it is difficult to perceive any real objection to the plaintiff's right to recover. The abandonment of the ship had no effect to destroy the right of recovery upon this policy. The court has already declared this opinion, in the cases of *Davy* v. *Hallett*,[*] and *Mumford* v. *Hallett*.[†] Freight is a distinct subject of insurance, and is to be considered as disconnected from the ship, in respect to the policy. Whether the abandonment of the ship deprives the insurer on freight of his salvage, or the hope of any indemnity, I need not say, although the better opinion is, that

* 3 *Caines*, 16.
† 1 *Johnson*,
433.

-it does. The effect of the abandonment of the ship, is immaterial. The plaintiff had a right to abandon in each case, and the defendants, by their policy, have treated the freight, as detached altogether from the ship. The plaintiff, therefore, calls for the value of his ship from the one insurer, and of his freight from the other; and, whether the insurer upon the ship is, or is not, to account to the insurer upon the freight, for freight, which may be subsequently earned or recovered, is a distinct question, which is not now before us: That is to be left to be decided between those two sets of insurers, and the plaintiff has no concern with the question. For the reasons already given by this court, in the cases referred to, we must not confound the two subjects of insurance. The abandonment of the ship is not to be likened to a voluntary sale of the ship. It is an act arising out of the insurance, and imposed by necessity. To hold that the plaintiff may not abandon his ship, without destroying his remedy upon his freight policy, appears to me to be denying that freight is a distinct subject of insurance. It would be truly an anomaly in the law of insurance, if, when both ship and freight are separately insured, you cannot abandon the one subject, without thereby defeating your right on the other policy. But after the opinions which have already been given in this court, we consider the question as settled, and trust that it will no more be disturbed. The only remaining point is, upon what principles shall the loss, in the present instance, be liquidated.

This was termed an open policy, but whether a policy on freight, like a policy upon profits, (1 *Johnson*, 439.) must not, in all cases, where the value is not ascertained by the agreement of the parties, be deemed to be of the value of the subscription, we need not now inquire, since the charter-party has, in this case, fixed the entire freight at 18,000 dollars, of which one moiety only has been received by the plaintiff. He is, therefore, entitled to recover the remaining moiety, upon the ground of a total loss, and the verdict is to be adjusted accordingly.

Judgment for the plaintiff.