THE BUFFALO CITY BANK v. THE NORTH WESTERN INSU-
RANCE COMPANY.

The schooner Europa, owned by B., being at Chicago, laden with a cargo
of wheat, B. procured the defendant to insure her freight-list at $1,500,
which was about its amount, on a voyage to Buffalo. The vessel and
cargo were also insured by other companies, by B. the owner. During
the voyage, the vessel went ashore in a storm, at a place where there was
no port, and went to pieces, becoming a complete wreck. B. on the same
day made abandonment of the different subjects of insurance to the respec-
tive underwriters, which were accepted. The insurers of the wheat sub-
sequently saved about three-fourths of the wheat in a damaged condition.
Held, that B. having abandoned, as to the freight-list, as for a total loss,
and the defendant having accepted the same, such acceptance was conclu-
sive upon it, and the company could not object that the loss was not total,
nor that for any other reason, it was not a case for abandonment.
Held, also, that the defendant having accepted the abandonment of the
freight-list as for a total loss, the plaintiff was entitled to recover the
full amount of the freight, the same as if the voyage had been completed,
and not merely to freight pro rata itineris.

ACTION on a policy of insurance on freight, the plaintiff
suing for the interest of Elijah K. Bruce, the assured,
whose right it acquired by assignment, subsequent to the
loss. The schooner Europa being at Chicago, laden with
a cargo of 16,758 bushels of wheat, Bruce, the owner,
procured the defendant to insure her freight-list at $1,500,
which was about its amount, on a voyage from Chicago to
Buffalo. The schooner proceeded on her voyage until
about six miles from Buffalo, when she went ashore in a
storm, at a place where there was no port, and went to
pieces, becoming a complete wreck. The vessel, cargo and
freight all belonged to Bruce, and each was insured in dif-
ferent companies, the defendant being insurer on the freight-
list only. Bruce, on the same day, made abandonments
of the different subjects of insurance to the respective
underwriters, which were accepted. The insurers of the
wheat, the Mutual Insurance Company of Buffalo, sent

persons to the wreck, and saved and caused to be brought to Buffalo on other vessels, 12,349 bushels in a damaged condition. The defendant insisted that the plaintiff was not entitled to recover for a total loss, but only *pro rata;* that the insurers on the wheat having, by the abandonment, became its owners, and having consented to receive the portion which was saved at an intermediate point, thereby became liable to the owners of the vessel for the freight to that point, and hence that the plaintiff could only recover for a partial loss. The judge, Hon. J. A. VERPLANK, of the superior court of Buffalo, before whom the case was tried without a jury, held otherwise, and gave judgment for the plaintiff for $1,500 and interest, which judgment was affirmed at a general term. The defendant then brought the present appeal.

*J. C. Churchill*, for the appellant.

*John Ganson*, for the respondent.

DENIO, C. J. Freight, which is the compensation which the owner of the vessel is to receive for carrying the goods, is, by the law of England, and of this state, a distinct subject of insurance. In adjusting the indemnity under contracts for insurance, a diversity has arisen between the courts of the two countries. In England freight is considered so far an incident of the ownership of the vessel that where the latter is lost, or so much damaged as to warrant an abandonment in the course of the voyage, the insurers are entitled upon abandonment to the benefit of the contract for carrying the goods, and if freight is subsequently earned for carrying property taken on board at the commencement of the voyage, they can claim it as an incidental advantage acquired by them by means of the abandonment. As where a vessel has been stranded, and in that state abandoned to the insurers, and is afterwards gotten off, repaired and sent on her voyage, and delivers the cargo, thus earning the

freight, it belongs to the underwriters on the ship and not to the insurers of freight. (*Case* v. *Davidson*, 5 Maule & Selw. 79; affirmed in the Exchequer Chamber, S. C. 2 Brod. & Bing. 379.) The rule has been settled otherwise in this country, where it is held that the insurers of the vessel are entitled only to what the ship may actually earn subsequently to the abandonment. (*The United Insurance Company* v. *Lenox*, 1 John. Ca. 377, and note in the edition of 1846—affirmed in error, 2d id. 443; 3 Kent's Com. 333.) The rule thus established has been subsequently adhered to in this and in other states, as will be seen by the foregoing references. Upon the loss and abandonment of the ship in this case, the underwriters upon it acquired title to nothing except the *debris* of the wrecked vessel. If the incipient freight, or any part of it, has been saved by the acts of the owners of the cargo, or their transferees, the insurers of cargo, by their receiving it at the place where the vessel went ashore, or by its being taken to its destination in another vessel, the abandonees of the schooner have no concern with it, and the abandonees of freight are deprived of nothing. It is argued that the defendant ought not to pay the full sum insured because the *pro rata* amount which the owner of the cargo ought to pay would have been saved to Bruce, as the ship owner, if he had not abandoned the vessel. This might have been secured if the abandonees of the vessel fully represented Bruce in all his rights concerning it; but we have seen that they did not, for they had no concern with the incipient freight, and, as the vessel did not contribute to the earning of freight after the abandonment, if any was earned, these abandonees obtained no interest in the freight whatever.

Nor did the abandonment of the cargo to the underwriters upon it affect the present question. They took the part of the wheat which was saved subject to any claims upon it for *pro rata* freight, if there were any such claims. (*United Ins. Co.* v. *Lenox, supra—per* RADCLIFF. J., at p. 379.) It is said that the abandonment of cargo by Bruce

was not one of the things which the defendants insured against, which is very true; but the winds and waves which caused the vessel to go ashore, and which produced the injury to the cargo and justified its abandonment, and thus prevented the earning of freight was the very peril which the defendants undertook to indemnify Bruce against. It was the occurrence of the storm which gave rise to the state of things which authorized Bruce to abandon all the several subjects insured to the respective insurers. These insurers, by force of the abandonment, took whatever property or interest remained in the subjects insured, but they did not otherwise represent Bruce. For example, the insurers upon the vessel acquired title to the broken planks, spars and iron which could be collected from the wreck. The insurers upon cargo took title to the damaged wheat subject to the payment of any freight which under the circumstances it ought to bear, and the defendants as insurers of freight succeeded to all claims for freight which Bruce would have had against the owners and the cargo, if it had been owned by another person.

It is further urged that the loss of freight was not so great as to entitle Bruce to abandon it to the defendant. The judge has, however, found that the abandonment was accepted. This divested Bruce of the right to proportionate freight, and conferred that right, if it existed in any one, upon the defendant. But I think there was a just occasion for abandonment. The vessel had become a total wreck at an intermediate point which was not a port, and vessel, cargo and the right to freight were *prima facie* lost. No freight had been earned, and the vessel which was to have earned it was broken to pieces. If any could have ever been earned it would not have been in any natural, but in an exceptional, way, as by the owner of the cargo accepting it where it then was, or by the abandonee of the ship getting it to port in some other way. An abandonment is said to be justifiable for anything which, in the course of the voyage, constitutes *at that time* a total loss.

If anything subsequently occurs, as a recapture in the case of a vessel captured, or getting a cargo to port in another vessel, it is the good fortune of the underwriters, but does not affect the legality of the abandonment. (*Holdsworth* v. *Wise*, 7 Barn. & Cress. 794; 14 Eng. C. L. 129.)

I conclude, therefore, that the judgment of the superior court of Buffalo was right.

HOGEBOOM, J. This is an action upon a policy of insurance upon the freight-list of the schooner Europa for $1,500, effected with the defendant by one Bruce, from whom, through an intermediate assignee from him after the loss, the plaintiff claims title. Bruce took out separate policies in separate insurance companies on the vessel, cargo and freight respectively. The voyage was from Chicago to Buffalo, and shortly before reaching Buffalo, and distant about six miles therefrom, the schooner went ashore and was lost. No question is made but that she was lost by some of the perils insured against. No question can be made, I think, but that there was a total loss, at all events, of the vessel. The fact found is, that she " was by the force of the winds and the waves, driven ashore where there was no port, and there went to pieces and became a total loss." She was thereupon promptly abandoned to the underwriters, and the abandonment was accepted. The cargo was also, on the day of the disaster, abandoned to the underwriters, and such abandonment was accepted. A portion of the cargo, about three-fourths thereof, was subsequently recovered by the underwriters, and taken by them in other vessels to Buffalo, the port of destination. On the same day also, that the disaster occurred, the contract of affreightment and the freight-list were abandoned to the defendant, and the defendant accepted the same. These facts are all found in the case, and no exception is taken to them. The only exceptions in the case are to the finding and decision of the court, that the plaintiff was entitled to recover the whole amount of the freight covered

by the policy of insurance, to wit: $1,500 and interest; whereas, the court should (as it claimed) have decided that the plaintiff was only entitled to recover for a partial loss; and secondly, that the court decided as a question of law on the facts found that the plaintiff was entitled to recover as for a total loss.

The positions taken by the defendant upon this appeal are, as I understand them, 1st. That there was not in fact a total loss of the cargo, or of the freight, and no such acceptance of an abandonment as would extend the right of the insured to recover beyond his actual loss. 2d. That if there was a total loss of the freight, or one which under the acts of the parties must be treated as such, it occurred by the acts or omissions of Bruce, for which the defendants are not liable.

I. That there was a total loss of the vessel, and an effectual abandonment of her as such to the underwriters, is established by the proof in the case, and found by the court which tried the cause, and is not now open to further examination here. But as the vessel, the cargo and the freight are distinct interests, it is a possible circumstance that a total loss of the vessel would not necessarily involve a total loss also of the cargo and of the freight. In one sense, there was not a total loss of the cargo; for of the 16,000 bushels of wheat with which the vessel was laden, 12,000 bushels reached Buffalo, though in a damaged condition, notwithstanding the disaster. But if the question in this case was as to the right to recover for the cargo as a total loss, I do not see how it could be effectually disputed. It affirmatively appears that the underwriters accepted the abandonment of the cargo, and this implies a surrender of it by Bruce into their possession, and complete control of it by them. It was abandoned as a total loss, and they accepted it as such. They took possession of it, and themselves caused it to be taken to Buffalo. It was an act performed for their own benefit and their own indemnity. The wheat so taken to Buffalo belonged to

them, and was at their disposal. They could not have compelled the owner or consignee to receive it; nor could he, after an effectual abandonment, demand it or recover it. He had no right to it. In its damaged condition he would not of course have received it; nor could the carrier, independent of the question of abandonment, have compelled its acceptance by him. It is claimed on the part of the appellant, that there was no valid or sufficient acceptance of the abandonment. The question is not open to debate. The fact is found otherwise, and is not subject to review here. The legal effect of the acceptance of an abandonment, is to concede the right of abandonment and the fact of total loss. They are no longer open to question. They are, in the absence of fraud or mistake, conclusive upon the parties, and the underwriters cannot refuse to pay the whole sum insured. (Philips on Insurance, §§ 1697–1705; Arnould on Insurance, 1172; *Smith* v. *Robertson*, 2 Dowl. 474.)

The same difficulty meets the defendants on the subject of the freight list. It was abandoned to the defendants, and they accepted it. No fraud, mistake or ignorance of the facts is pretended. Such acceptance is conclusive upon them, as before stated. They have no longer any right to object that the loss was not total, nor that for any other reason it was not a case for abandonment. It is said that the act of the defendant's agent is equivocal both as to the *intent* and the *authority* to accept the abandonment. But the evidence is sufficiently clear to justify the finding of the court, and the fact *is* found—is not the subject of exception, and is not open to controversy. It is claimed that the act of abandonment of the freight, if rightfully made, and whether accepted or not, being made at a point intermediate the port of shipment and the port of delivery, could not entitle the ship owner to full freight as for a completed voyage, but only *pro rata itineris*, and that it was the duty of Bruce, as owner of the vessel, to offer to carry forward the part of the cargo which survived the

17

wreck to its place of destination, and earn freight thereon, and if he failed or refused to do so, and thereby the cargo was lost, the defendants are not liable for a total loss, but only for such portion of the loss as they would have been chargeable with if the ship owner had done his duty.

But this is an imperfect view of the relations of the parties and of the facts of the case. When the disaster occurred the freight had not been earned; and if the ship owner improperly terminated the voyage at that point, he had no right to demand any freight whatever. He abandoned the vessel, the cargo, and the freight list. These abandonments were accepted by the underwriters. It is unnecessary, therefore, to consider whether they were lawfully made. The defendants are foreclosed from disputing them, at least that involving the freight list. The effect of such abandonment and acceptance was to put the defendants in Bruce's place as to the obligation to earn freight, and the right to recover therefor. As between themselves and the owners of the cargo, they were probably bound to carry the cargo, or so much as was saved from shipwreck, to the port of destination. But as between them and Bruce, having accepted the abandonment of the freight list as for a total loss, we must treat it as such, and give effect to it accordingly. We must, I think, regard it in the same light as if the voyage had been completed and the freight fully earned. Hence the plaintiffs would be entitled to recover the full amount of the freight.

The judgment of the court below should be affirmed.

All the judges concurring, judgment affirmed.