HENRY W. HUBBELL, RESPONDENT, *v.* THE GREAT WEST-
ERN INSURANCE COMPANY, APPELLANT.

*Policy of insurance — right of abandonment — acceptance of.*

The plaintiff took out policies of insurance upon a ship and cargo owned by him,
and also procured one to be issued to him by the defendant upon the freight.
The latter policy provided that "no claim for total loss shall be made  *  *  *
except in the case of  *  *  *  an actual or technical loss of the vessel under
the policies of insurance on her." The vessel was wrecked at a short distance
from her port of destination, and both vessel and cargo abandoned to the
underwriters, including defendant, who took possession of the ship and suc-
ceeded in transporting a portion of the cargo to the said port, where it was sold
and the proceeds arising thereon distributed among them.

An abandonment of the freight was also made, but the same was not accepted
by the defendant. *Held*, that the plaintiff had the right to abandon the
freight, and that the defendant was liable under the policy for a total loss
thereof, and that his right so to do was not affected by the fact that the
underwriters succeeded in transporting a portion of the cargo to the port of
destination and there disposing of the same.

*The Buffalo City Bank* v. *The North-western Ins. Co.* (30 N. Y., 251) followed.

Where an abandonment has been accepted, the question as to whether or not the
loss was a total one is no longer an open one, but where it has not been accepted,
the insured must establish by satisfactory proof a state of facts clearly showing
his right to abandon.

APPEAL from a judgment in favor of the plaintiff, entered upon
the verdict of a jury.

*Joseph H. Choate*, for the appellant. The law is well settled
that, as between insured and insurers on freight, the insured, or the
master, as representing him, is bound, in case of disaster, to forward
the goods to the port of destination, so as to earn the freight, if it
is possible to do so ; where the freight insured is that which is to
be earned under a bill of lading, he has the right to hold on to the
goods and forward them for the very purpose of earning his
freight ; and if he abandons them or lets the shipper take them
without paying the freight, it is his own loss, and he cannot throw
it on the underwriters of that interest. (*Bradhurst* v. *The Colum-
bian Ins. Co.*, 9 Johns., 17; *Griswold* v. *The N. Y. Ins. Co.*, 3 id.,
321; *Hugg* v. *The Augusta Ins. and Banking Co.*, 7 How. [U. S.],

595 ; *Saltus* v. *Ocean Ins. Co.*, 14 Johns., 138 ; *Palmer* v. *Lorillard*, 16 id., 348; *Howard* v. *Astor Mut. Ins. Co.*, 5 Bosw., 38 ; *Ogden* v. *The Gen. Mut. Ins. Co.*, 2 Duer, 204; *Allen* v. *The Mercantile Mut. Ins. Co.*, 44 N. Y., 437 ; *Lord* v. *The Neptune Ins. Co.*, 10 Gray, 109 ; *Scottish Ins. Co.* v. *Turner*, 1 MacQueen's App. Cas., 334.)

*Henry J. Scudder*, for the respondent.

DAVIS, P. J. :

This action is brought upon a valued policy of insurance on the freight of the ship Tartar.

The freight was valued in the policy at $25,000. It, as well as the ship and the cargo, belonged to the same owners, and by the policy the loss thereon, if any, was payable to the plaintiff.

The ship was insured for $50,000, valued at $70,000, and of this insurance $10,000 was in the defendant's company. The cargo was insured for $125,728. The value of the cargo in bond was about $152,000, but about $182,000 in market, after payment of duties. On the 3d of February, 1867, the ship was stranded at Deal beach, about fifty miles from the city of New York which was her port of destination, and became a total loss. On the fifth of February following, the ship and cargo were abandoned to the respective insurers ; and these abandonments were accepted by them. The freight (as the jury must be regarded as finding) was at or about the same time abandoned to the defendants, but the abandonment thereof was not accepted. The Coast Wrecking Company, shortly after the stranding of the ship, took possession of her and made efforts to save her and her cargo. This possession was taken at first with the consent of the master, but after the abandonment the wrecking company was employed by the underwriters, and acted as salvors and agents. A very small amount in value of the material of the ship was saved, but a considerable portion of her cargo was taken out by the company and carried to New York, where it was sold for the benefit of the several underwriters. The gross value of cargo thus saved was $66,899.63, but out of that sum there was paid $14,165.80 for expenses, and $18,743.38 for salvage, leaving of actual net proceeds of cargo, the sum of $28,115.37. The actual net

proceeds for materials saved from the ship after deducting salvage and charges was $2,341.84.

The defendants received their share of the proceeds of the materials saved from the ship. After the abandonment, the plaintiff had nothing to do with the ship or cargo, nor had any one on his behalf. The policy on the freight contained these words : "No claim for total loss shall be made under this insurance, except in the case of loss of more than fifty per cent of the freight on board, and also an actual or technical loss of the vessel under the policy of insurance on her, any savings of freight then on board to be for the benefit of the company, but in case the vessel is not totally lost, the liability, under this insurance, is not to be greater than the actual loss by the destruction of the freight on board." The defendants admitted their liability for the freight, on so much of the cargo as was lost and paid the same, but they denied all liability for freight on so much of the cargo as was rescued by the wrecking company in bulk and brought to New York. The right of the plaintiff to make a total abandonment of the freight seems to · be clearly established by the evidence in the case. The ship was both an actual and technical loss, and the defendants accepted the abandonment of the vessel, under the provisions of their policy on her as a total loss. This acceptance by the defendants, and by the other underwriters, of the ship as a total loss, necessarily conceded the absolute inability of the vessel to complete her voyage and deliver her cargo at the port of New York. The abandonment of the cargo as a total loss was accepted by the several insurers of the cargo. These abandonments of ship and cargo, and the acceptance thereof, entitled the abandonees to the possession of the wreck and cargo on board, and to treat the same, or whatever thereof could be rescued by their agents or by salvors, as salvage the proceeds of which should be applied to their benefit. This salvage was carried by the underwriters to the port of New York, not as a continuation of the voyage for the purpose of earning freight *pro tanto*, but as salvage to be disposed of and applied in accordance with their respective interests. The plaintiff appears to have been consulted to some extent, in respect to the disposition of the salvage, but the evidence of his connection with it was not sufficient to have justified the jury in finding that he received any portion of it as cargo, delivered from

the vessel for the purpose of earning any portion of the freight. But for a single circumstance of distinction, we should regard this case as completely disposed of by *The Buffalo City Bank* v. *The North-western Insurance Co.* (30 N. Y., 251). In that case the vessel, cargo and freight all belonged to the same owner, and each was insured in different companies, the defendant being insurer only of the freight lost. The owner made abandonments of the different subjects of insurance to the respective underwriters, which were accepted. The insurers of the cargo sent persons to the wreck, and saved and caused to be brought into port a very large proportion of the cargo, but in a damaged condition. The defendant insisted that the plaintiff was not entitled to recover for a total loss of the freight, but only *pro rata* upon so much as was wholly lost. The trial court held otherwise, and gave judgment for the whole amount of the freight. The only difference between the facts in that case and the present is, that the defendants in that case, who were insurers of the freight list, accepted the abandonment.

The Court of Appeals sustained the recovery in that action, holding that the owner having abandoned the freight as a total loss, and the defendant having accepted the same, such acceptance was conclusive upon it, and the plaintiff was entitled to recover the full amount of the freight, and not merely freight *pro rata itineris.* DENIO, Ch. J., in the course of his opinion, after alluding to the fact of the acceptance of the abandonment, says: "But I think there was just occasion for abandonment. The vessel became a total wreck at an intermediate point which was not a port, and vessel, cargo and right to freight, were *prima facie* lost. No freight had been earned, and the vessel which was to have earned it was broken to pieces. If any could have ever been earned, it would not have been in any natural, but in an extraordinary way, as by the owner of the cargo accepting it where it then was, or by getting it to the port in some other way.'

"Abandonment is said to be justified by any thing which, in the course of the voyage, constitutes at that time a total loss. If any thing subsequently occurs, as a rescue in the case of a vessel captured, or the getting the cargo to port in another vessel, it is the good fortune of the underwriters, but it does not affect the legality of

the abandonment. (*Holdsworth* v. *Wise*, 7 B. & C., 794; 14 Eng. C. L., 355.)"

He held, also, that the defendants, as insurers of freight, succeeded to all claims for freight which Bruce (the owner) would have had against the owners of the cargo had it been owned by any other person. The precise state of things described in the opinion of the learned chief justice, in that case, have occurred in this, so far as respects the total loss of the ship and freight at the time the abandonment was made.

The absence of the acceptance of the abandonment of the freight by the defendant, in this case, only leaves open the question whether such abandonment was rightfully and properly made. If it were, the same conclusions attach to it, we think, as though it had been accepted by the defendant. The only difference, as it seems to us, being that where the abandonment is accepted, the question of total loss is no longer an open one, but where the abandonment is not accepted the insured is obliged to establish by satisfactory proof, a state of facts clearly showing the right to abandon. That state of facts was in this case clearly proved. The vessel was stranded, and despite all efforts to save her was destroyed by the action of the waves. The abandonment, as a total loss, was accepted by the defendant upon its policy on the vessel. Her cargo was also abandoned as a total loss to the underwriters and accepted by them; and salvors, or agents in their behalf, were engaged in an attempt to save so much of it as it might be possible to rescue. Whatever was saved was in a damaged condition, and would have been totally lost, but for the interference of the abandonees, or salvors. Upon such a state of facts the abandonment of the freight to the defendant was a plain, legal right under the stipulations of the policy. The exigency had arisen upon which, by the terms of the contract, abandonment as a total loss, might be made ; for we think no one can doubt that at the time of the abandonment, both vessel and cargo were justly to be regarded as a total loss, notwithstanding the intervention of subsequent circumstances saved a portion of the damaged cargo. The principles, therefore, which controlled the case of the *Buffalo City Bank* v. *The North-western Ins. Co.* (*supra*) seem to us to be entirely controlling of the present case. The case under the policy for total abandonment having thus been established, the policy itself provides

for the disposition of any savings of freight in a clause which is in these words: "Any savings of freight, then on board, to be for the benefit of the company." And it was for the defendant, if the abandonees of the cargo succeeded in getting any portion of it into port under such circumstances that there were " savings of freight," to see to it that their rights to such savings, under the abandonment, were enforced as against the other abandonees.

They cannot, we think, charge their liability for a total loss, under the policy, by proving that the abandonees of the cargo have applied to their use, such savings of freight; but we, by no means, intend to indicate that upon the state of facts existing in this case, there could be any such claim.

The true rule, on that subject, is probably that laid down by Chancellor KENT, in *Davy* v. *Hallett* (3 Caines, 16). (See *Wallerstein* v. *Columbia Ins. Co.*, 44 N. Y., 208 ; *Allen* v. *Mercantile and Mutual Ins. Co.*, id., 437.) We are not insensible to the ingenious argument of the learned counsel for the appellant, nor to the embarrassment which some of the points made by him bring into this case, yet the consideration we have been able to give to it, leads us satisfactorily to ourselves, to the conclusion that the judgment of the court below is right and should be affirmed.

BRADY and DANIELS, JJ., concurred.

Judgment affirmed.

On motion for a reargument made at this term, the following opinion was delivered:

DAVIS, P. J.:

It is not correct to say that the court, at the close of the charge, withdrew the question of abandonment from the jury. On the contrary, the question was, and was intended by the court to be left to the jury. It was supposed, when the former opinion was written, that the verdict necessarily involved the finding of a formal abandonment. Our attention is called to a request of the plaintiff, made at the close of the charge, which is in these words : " I ask your honor to charge that if the jury find that there was no formal abandonment of the freight, and they find that no part of the cargo reached the plaintiff at the port of destination *in specie*, they may still find for

the plaintiff, for there was then a total loss of the freight." "The court so charged." If the jury found, as they may have done, that there was no formal abandonment of the freight, but that no part of the cargo ever reached the plaintiff *in specie*, it seems to us that the plaintiff would still be entitled to a verdict. The cargo was taken possession of by its abandonees, and by salvors, under such circumstances and for such purposes that its character was changed; and by the terms of the contract between these parties, the right to freight was transferred to the defendants. Unless some portion of the cargo came to the plaintiff's hands *in specie* and *as cargo*, no freight would be earned entitling defendants to a deduction from its total loss, whatever rights defendants may have had to participate in the distribution of the salvage.

There was no error in charging the request. We find no reason to change our views as to the correctness of the verdict and judgment, and wish to add nothing further than to indicate that if the jury found favorably to plaintiff on either of the propositions submitted, to wit, the abandonment or the delivery *in specie* to plaintiff of any part of the cargo, the plaintiff was entitled to recover.

The motion for reargument should be denied.

DANIELS, J., concurred.

Motion denied.