TREADWELL & THORNE *against* THE UNION INSURANCE
COMPANY.

In an action on a policy of insurance upon a cargo, the underwriters may show in their defence, that the vessel had not a competent crew, or a captain or pilot of competent skill. But this is a question of fact to be submitted to a jury, upon the nature of the voyage, &c.

If the vessel become disabled, in such case, the underwriters have a right to claim that the master should procure another vessel to forward the cargo, if in his power.

The rule on this subject is, that if there be a vessel in the port of distress, or in a contiguous port, the master should procure it. But where it appeared that resort must have been had to distant places ; and, independent of procuring a vessel, there were further serious impediments in the way of putting the cargo on board ; *held*, that the rule was not obligatory.

A cargo was ensured at and from *North Carolina* to *New-York; held*, that if the vessel was sea-worthy when she passed the boundary line of *North-Carolina*, this was sufficient ; and her unsea-worthiness previous to that point of time, would be no defence in an action against the underwriters for a loss.

ASSUMPSIT upon a valued policy of insurance, dated *September 22d*, 1823, on part of 800 bushels of wheat, on board the schooner *Lodge, Farrow*, master, on a voyage at and from *North-Carolina* to *New-York*, containing the clause, " the captain at liberty to act as pilot," and the common memorandum, by which, among other things, grain of all kinds is warranted free from average, unless general.

The cause was tried at the *New-York* circuit, *January* 31*st*, 1825, before EDWARDS, C. Judge.

On the trial, the plaintiffs proved, that on the 13*th* of *September*, 1823, the schooner sailed with the wheat on board, from *Perquimions* river, at or near the town of *Hertford*, in the state of *North-Carolina*, on her voyage for *New-York;* and after experiencing a series of head winds, and, at last, very tempestuous weather, till the 8*th* of *November*, she was run on shore upon *Cape Hatteras* banks, about 18 miles north of *Cape Hatteras* light house ; this being deemed necessary by the master and crew, to save the vessel and cargo from total destruction, and preserve the lives of the crew. In the act of running her on shore, she was so much injured as to be incapable of proceeding on her voyage, and was afterwards sold. The wheat was, in the end, so intermixed with sand and water, as, in the opinion of the master, to be un-

fit for transportation, and was sold at public auction, after full notice by advertisement, for $70,55½ ; which, after defraying commissions, expenses, &c. left $22, afterwards paid to the consignees.

Verdict for the plaintiffs for the sum insured, with interest, as for a total loss, deducting the net proceeds of the salvage.

A motion was now made in behalf of the defendants, for a new trial, grounded on a very voluminous case, containing the evidence at large, which, so far as it is material, beyond what is above given, will be found stated in the opinion of the court.

*T. A. Emmet,* for the motion, insisted, 1, that the vessel was not sea-worthy, either at the commencement of the risk, or any other time. (1 *Caines' Rep.* 32. *Marsh on Ins. Condy's ed.* 154, 5, 165 *a, n.* (16). *id.* 165 *b, n.* (17). *id.* 166, *n.* (18). 1 *John. Cas.* 184. 1 *Mass. Rep.* 436. *Phil. on Ins.* 114, 117. *Selw. N. P.* 4 *ed.* 954, *n.* (53.)

2. That the master was guilty of so many and great delays in the prosecution of the voyage, as amounted to a deviation.

3. That the voyage was broken up on account of the sale of the cargo, and not from the impossibility of procuring another vessel to send on the cargo to *New-York;* and that such a vessel could easily have been procured. (18 *John.* 210, 11. 14 *John.* 138. 1 *Caines' Rep.* 196. 3 *Caines' Rep.* 108. 1 *John. Cas.* 226. *Condy's Marsh.* 221, 224, 233. 1 *Wheat.* 224. 7 *East,* 38.)

*G. Griffin,* contra. 1. The crew of the vessel was competent for the voyage. (*Park on Ins.* 299, note (*a*). 2 *Campb.* 235. 3 *Taunt.* 299. 2 *B. & A.* 320. 1 *Caines' Rep.* 217.)

2. There was no deviation, or unnecessary delay. (4 *Esp. Rep.* 25. 2 *Condy's Marsh.* 840, 1, *note.* 2 *Taunt.* 301.)

3. It was not, under the circumstances, the duty of the master to attempt to forward the cargo to its port of destination, in another vessel ; and there was, therefore,

UTICA,
Aug. 1826.

Treadwell
v.
Union Ins. Co.

a loss of the voyage by a peril insured against. (*Park on Ins.* 152, 3, 221. *Phil. on Ins.* 489, 90, *and the cases there cited.* 12 *John.* 107. 18 *John.* 208.)

*Curia, per* WOODWORTH, J. Three points are raised by the defendants :

1. That the vessel was not sea worthy ;

2. That the master was guilty of so many and great delays, as amounted to a deviation ;

3. That the voyage was broken up, on account of the state of the cargo ; and not from the impossibility of procuring another vessel, to send on the cargo to *New-York.*

As to the vessel, it is satisfactorily made out, that she was tight, staunch and strong, on the 13*th* of *September,* 1823. Having received her cargo on board, she sailed on her voyage to *New-York,* down *Perquimions* river, from a place at or near *Hertford,* in the state of *North-Carolina.* The crew consisted of the captain, and one hand. On the 16*th* of *September,* and while the vessel lay in *Cape Hatteras* channel, detained by head winds, the master shipped another hand. It satisfactorily appears that the crew previously on board was competent for river and sound navigation. The weight of evidence is, that three hands were a competent number for the residue of the voyage. Owing to adverse winds, there was great delay, and little progress made ; but there is no ground for believing that reasonable diligence was not used in the prosecution of the voyage. The risk commenced at and from *North-Carolina.* If the vessel was seaworthy at the time she passed the boundary line of that state, it is sufficient. The insurers not being responsible for a loss happening previous to her arrival at the point of departure, the inquiry as to her previous seaworthiness, I apprehend, becomes immaterial.

But it is contended that there was not a competent crew, because the master was not acquainted with the science of navigation. This question was not raised at the trial. The attention of neither the judge nor jury was called to the point. It was a question of fact, whether the coasting

trade could be pursued with safety, without having on board a navigator capable of making an observation to find the latitude. From the finding of the jury, it may be presumed they considered it unnecessary. Had the question been raised at the trial, we cannot say that the plaintiffs might not have given further evidence; and shown that, from the nature of this navigation, the proximity to land, the number of harbors, as well as from other facts, it was consistent with prudence and safety, to dispense with a scientific navigator. It is not, therefore, admissible, to allow the defendants the benefit of this exception now. It should have been made at the trial. *Berrian* testified, that not more than one fourth of the masters of vessels, of the size of the *Lodge*, engaged in this trade, understand the science of navigation; and that that fact is generally known in *New-York*. This, it is true, does not prove a usage, sanctioned by the practice of the community generally; but it goes far to show in what light the practice is considered by mariners and navigators of vessels. That proof of general usage would have been admissible, I think undeniable, provided it had been made out according to the rule in *Smith* v. *Wright*, (1 *Caines*, 45.) It is there observed, "the true test of commercial usage is, its having existed a sufficient length of time to have become generally known, and to warrant a presumption that contracts are made in reference to it."

If this view be correct, it follows, that a new trial should not be granted, on the ground of an incompetent crew.

But the objection, if made in season, cannot avail. The assured, it is true, cannot recover, unless there be a sufficient crew, and a captain and pilot of competent skill. (7 *T. R.* 160.) But the plaintiffs have very satisfactorily proved the general competency of the master. Several witnesses speak of him as entirely competent for the voyage. If the alleged incompetency is founded on the fact that he was ignorant of navigation, it was incumbent on the defendants to have shown that such ignorance was a disqualification; that it was not considered safe to make the voyage, without having a scientific navigator. No

such testimony was given.   The defendants' witnesses do not give an opinion on this point.   They say, they have taken a navigator ; but they do not say, it might not be safely dispensed with.

I should not, therefore, be disposed to disturb the verdict, on the evidence stated in the case relative to this ground of the motion.

As to the third question, the general rule is, that when the ship becomes disabled, it is the duty of the master to procure another vessel, if it is in his power ; and the insurer is not answerable for his voluntary neglect so to do, unless such neglect is caused by an act of barratry.   (9 *John.* 21.)   What may be done, ought to be done, when the rights of third persons are essentially concerned in the act.   This general rule, however, is restricted to reasonable limits.   The circumstances of each particular case must be considered.   From them it must be determined, whether the difficulties in the way were so great as to form an excuse for not sending on the cargo.   In the case of *Saltus* v. *The Ocean Insurance Company*, (12 *John.* 107,) it was decided that the master was not bound to seek a vessel, out of the port of distress, or out of a port immediately contiguous.   In that case, there were a number of vessels at *Cork*, 16 miles distant, which the master supposed might have been obtained ; but he made no attempt to procure them.   The question resolves itself into this ; not whether a master, by going to a distant port or place, might have procured another vessel ; nor, whether by first conveying the cargo some distance over land, it was possible to effect a re-shipment ; but whether, under the circumstances in which he was placed, the law required him to make the attempt.   Some certain rule, to govern the discretion of the master, is desirable, wherever practicable.   Although no general rule will govern every case, the approach to certainty will be considered beneficial to all parties.   I think, then, the rule laid down in the last case is at once safe and reasonable.   If there be a vessel in the same port, or a contiguous port, which is substantially

the same thing, his duty is clear.   The rule is imperative.
But where resort must be had to distant places, and, inde-
pendent of procuring a vessel, there are further serious
impediments in the way of putting the cargo on board, the
rule is not obligatory.

In the present instance, the vessel was wrecked, and
lying on the beach.   There was no port within a number
of miles.   A vessel could not come along side, for the pur-
pose of re-shipment.   In the first place, the wheat must
have been carted across the beach.   After that had been
done, it appears from the evidence, boats would have been
necessary to carry it to the vessel, a distance of several
miles, it not being practicable to approach the shore.   The
conveyance in boats would have been attended with dan-
ger : in a calm, with but little ; but if a gale had come on,
with almost certain destruction.   Must this labor and hazard
be incurred to make the underwriter liable ?   The master
was not bound to transport the wheat by land ; and then
incur the risk of sending it in boats to the vessel.   I think
the application of so severe a principle unreasonable in it-
self ; and not called for, in order to enforce, in good faith,
the execution of the contract.   The master, under the cir-
cumstances, was justified in not making an attempt to pro-
cure a vessel.   The insurer has no cause for complaint.
An event happened beyond the control of all parties,
which, in the given case, denies to the defendants the
right of insisting on a re-shipment.

I am of opinion, that the motion for a new trial be de-
nied.

New trial denied.