Mr. Justice NELSON
 

 delivered the opinion of the court, after reading the statement prefixed to this report.
 

 The first point 'certified, upon the assumptions stated, involves the question, whether the underwriter of a policy upon freight of goods warranted free from average is liable, as for a total loss, unless the goods be actually destroyed by one of the perils insured against, so as to be incapable of shipment to the port of destination; or whether a total loss may result at the port of distress from the goods having been so much damaged, that, if sent on, they would become of no value at the time they reached the'»port of destination'; and hence, instead of being sent on, may be sold for the benefit of whom it may concern.
 

 The contract of insurance upon freight is, that the goods shall arrive at the port of delivery notwithstanding the perils insured against; and that, if they fail thus, to arrive, and the owner is thereby unable to- earn his freight, the underwriter will make it good.
 

 It does not undertake that the goods shall be delivered in a sound or merchantable state, or that the vessel in which they are shipped shall be safe. against the dangers of the. sea, but 'that it shall be in the power of the insured to earn his freight; that is, that the perils, insured against shall. not prevent the ship from earning full freight for the assured in that voyage. If the ship and cargo remain, notwithstanding the disasters, in a condition to continue the voyage, it is in his power to earn freight, and he is bound to proceed ; but if damage happens to either, and the voyage is broken up, so that no freight can be earned, the owner is entitled to recover, as for a total or partial loss, according as he may or may mot have earned -freight
 
 pro rata itineris. ■
 

 If the damage happens to the vessel, and that can be repaired at the port of distress in a-reasonable time,-and at a reasonable expense, it is the duty of the owner to make the repairs, and to continue the voyage and earn his freight; and, on the other hand, if the damage happens to the goods, and the ship be in a capacity to proceed, or, if disabled, another can be procured upon reasonable terms, the owner of the ship will still be entitled to perform the voyage and recover his freight, unless the goods have been totally destroyed. In every case, before he can recover of the underwriter, he must show that he
 
 *605
 
 was prevented by one of the perils insured against from completing the voyage, and, for- that reason, had failed to entitle himself to freight from the shippers.
 

 The first point certified to us- assumes that the ship was capable of carrying on the cargo to the port of delivery notwithstanding the injuries received; and the only question is, whether the cargo was so much damaged, and in such a con-: dition, as to have dispensed with that duty.
 

 In the case of memorandum articles, the exception of particular average excludes a constructive total loss; and, of course, the principle which allows an-abandonment where the loss exceeds half the value does not apply. There must be an actual • total loss of-the. goods. The object of the clause is to protect the underwriter from any partial loss on; articles of a perishable nature, which are.liable to inherent, decay and damage, independently of the damage occasioned by the perils insured against; and where it would, be difficult, if not impossible, to distinguish between them. ' In case of a total loss, consequent upon the happening of one of - the perils, the whole damage - is' presumed to have arisen' from that cause, and. thus all dispute is avoided as to the origin or nature of the loss.
 

 What-constitutes a total loss of a memorandum article has ■ been'the subject of frequent, discussion, both in the courts of England and this country, and in the former of some diversity of opinión-; but, in most of the cases, the decisions have been uniform, and the principle governing the question regarded as •settled; and that is, ;so long as the ■ goods have not lost their original character, but remain in specie, and iii that-condition are capable of being- shipped to the destined port, there cannot be a total loss of the article, whatever may be the extent of the damage, so as to subject the underwriter. The loss is but partial. The cases are numerous on the sübject, and will be found collected in Park on Marine Ins., ch. 6, subd. 13, p. 247; 2 Phillips on Ins., ch. 18, p. 483; and 3 Kent's Com. 295, 296. It would be- useless to refer more particularly to them.
 

 The only doubt that has been expressed-in respect to the soundness of this rule is, whether a destruction in value for all the purposes of the -adventure, so that the objects of the voyage were no longer worth pursuing, should not be regarded as a- total loss within the memorandum clause, as well, as a destruction in specie. . But although this has been suggested in several cases in England as a proper qualification, and as coming within the obligation of the underwriter, there is ho case to be found in which’the suggestion has received the sanction of judicial authority.
 

 In this country the rule has been uniform, that there must-
 
 *606
 
 be a destruction .of the article in specie, as will be seen by a reference to the following authorities. Maggrath
 
 v.
 
 Church, 1 Caines, 196; Neilson
 
 v.
 
 Col. Ins. Co., 3 ib. 108; Le Roy
 
 v.
 
 Gouverneur, 1 Johns. Cas. 226; Griswold
 
 v.
 
 New York Ins. Co., 1 Johns. 205, Livingston, J.; S. C., 3 ib. 321; Saltus
 
 v.
 
 Ocean Ins. Co., 14 ib. 138; Whitney
 
 v.
 
 N. Y. Firemen Ins. Co., 18 ib. 208; Brooke
 
 v.
 
 Louis. State Ins. Co., 4 Martin, N. S. 640; S. C., 5 ib. 530; Morean
 
 v.
 
 U. S. Ins. Co., 1 Wheat. 219; McGaw
 
 v.
 
 Ocean Ins. Co., 23 Pick. 405; 3 Sumner, 544; 1 Story, 342.
 

 Whether the test of liability is made to depend upon the destruction in specie, or in value, would, we are inclined to think, as a ■ general rule, make practically very little, if any, difference; for while the goods remain in specie, and are capable of being carried'on in.that-condition to the destined port, it will rarely happen, that on their arrival they.will be of no value to the owner or consignee. The proposition assumes a complete destruction in value, otherwise the uncertainty attending it would be an insuperable objection; ■ and, in that view, it may be a question even if the degree of deterioration would not be greater to constitute a total loss than is required under the present rule.
 

 The rule as settled seems preferable, for its certainty and simplicity, and as affording the best security to the underwriter against the strong temptation that may frequently exist, on the part of the master and shipper, to convert a partial into, a total loss.
 

 Mr. Park, in speaking of the case of Cocking
 
 v.
 
 Fraser (4 Doug. 295), a leading one in the establishment of the rule, observes that the wisdom of the decision is apparent; for, otherwise, it would be a constant temptation to' the assured, whenever a cargo of this^description Was likely to reach the port of destination in an unsound state, to throw the loss upon the underwriters, by voluntarily giving up. the further' prosecution of the voyage, to which't'hey were not liable by the terms of the memorandum.-, (1 Park, 249.)
 

 The rule, it will be observed, as we have stated it, contemplates the arriVal of the goods, or some part of them, in specie, at the' port of delivery; or that they were capable of being shipped to that port in specie. And hence, if the commodity be damaged so that it would not' be allowed to remain on 'board consistently with the health of the crew or safety of the vessel, or if permission be refused to land the same by the public authorities at the port óf distress for fear of disease, and, for these and like causes, should, from necessity,- be destroyed by being thrown overboard, notwithstanding the-article existed
 
 *607
 
 in specie, and might have been carried on in that condition, there would still'be a total loss within the meaning of the policy. In the cases supposed, it is as effectually destroyed.by a peril insured against, as if it had gone to the bottom of the sea from the wreck of the ship. The same result follows, also, if the goods be so much damaged as to be incapable of reaching the port of destination in their original character.
 

 These principles are either stated in, of are' fairly deducible from, several cases,' but especially from the cases of Dyson
 
 v.
 
 Rowcroft, 3 Bos. & Pul. 474, and Roux
 
 v.
 
 Salvador, 3 Bing. N. C.266, and S. C., 1 Bing. N. C. 526.
 

 In Róux
 
 v.
 
 Salvador, in the Exchequer, it was observed ihat the argument rested upon the position, that, if, at the termination of the risk, the goods remained in specie, however damaged, there was not a total loss ,* and it was admitted. that the position might be just, if, by the termination of the risk, was meant the arrival of the goods at their place 'of destination ; but that there was a fallacy in applying those words to the termination of the adventure before that period by a peril of the sea, as the 'object of the policy is to obtain an indemnity for any loss that the assured might sustain by the goods being prevented by' the perils of the sea from arriving in safety at the port of destination.
 

 It. was also remarked, .that, if the goods once damaged by the perils of the sea, and' necessarily landed before the termination of the voyage, were, by reason of that damage, in such a state, though the species be not .utterly destroyed, that they could not with safety be reshipped into the same or any other vessel, —> or if it was certain that before the termination of the original voyage the species itself would disappear,;— in any of these' cases, the circumstance of their existence in specie at the forced termination of the risk was of no importance.
 

 The jury had found in that case, that the hides' were so far damaged by a peril of the sea, that they never could have ar-. rived at the port of destination in the form of hides; and as the destruction was not complete when they were taken out of the vessel at the port of distress, they became, in their then condition, a salvage for the benefit of the party who was to sustain the loss.
 

 In respect to the first point, therefore, the court direct that it be certified to the Circuit Court, that, if the jury find, that the jerked beef was a perishable article within the meaning of the policy, the defendant is not liable as for a total loss of the freight, unless it appears that there was a destruction in specie of the entire cargo, so that it had lost its original character at Nassau, the port of distress, or that a total destruction would
 
 *608
 
 have been inevitable from the damage received, if it had been reshipped before it could have arrived at Matanzas, the port of destination.
 

 The second point certified assumes that the vessel, notwithstanding the disaster, was in a condition to carry on the .cargo,
 

 or that another could be procured, and the question is, whether •the .plaintiff is entitled to- recover, as for a total loss of freight, if it appeáred that it was for the interest of the insured and insurer of the cargo, on account of the damaged condition of the portion sold, that .it should have been sold, and not carried on. to Matanzas, the port of delivery.
 

 -Many of the considerations stated in our examination of the first point certified have a direct application to this one ; as it there appears that the interest of the insured, or of the under' writer of the cargo, is not- taken into the account, nor.in. any way regarded in determining' whether or not a total loss of the freight has happened from any of the perils insured against, brit-whether there has been a. destruction of the entire cargo' in specie, or such damage received as would inevitably prevent .-the arrival, of any portion of it in specie at the destined port.
 

 The interest of the owner of the cargo may frequently be adverse to that of the owner of the ship; for although the goods remain in specie, arid in that condition capable of being carried on, it may be for the interest of the owner, or of the insurer of the cargo, to have it sold in its then damaged state at the intermediate port, instead of taking the risk of further deterioration. But, in that case, the owner, or those representing' him, must act upon their own responsibility;’ for, if he elects to receive the goods voluntarily at a place short of the port of destination, he is responsible, for the freight. The loss cannot be total, or partial at his will, or as his interest may dictate.
 

 It was said, in Griswold
 
 v.
 
 New York Ins. Co. (which was an action on á policy on freight), that whether it would have been wise or foolish in the shipper to have sent on the flour in the condition it- was in was á question not to be put to the plaintiffs. It was none of their concern. The risk of the value of the cargo at the port of delivery lay with the owners of the cargo. All that the plaintiffs had to do by their contract was to provide the means to take on the cargo, by repairing their ship or procuring another.
 

 Other considerations may arise as between the owner and insurer of the cargo, but ,it is not important now tó go into them.
 

 On looking into the facts in this case, it will be seen that the portion of the beef landed at Nassau, and sold, was wet and heated; and that the board of. health had recommended to the
 
 *609
 
 authorities, that it should be removed as soon as it conveniently coúld be without top great a sacrifice of the property. It is obvious, therefore, that the perishable condition of the article must be taken into consideration in deciding upon the obligation of the master, in.the emergency, to repair his vessel, or to procure another, for the purpose of sending it on to the port of delivery. ' If it should be made to appear that the repairs or procurement of another vessel would necessarily produce such a retardation of the voyage as would, in all probability, occasion a destruction of the article in specie before it could arrive at the port of destination, or from its damaged condition could not be reshipped in time consistently with the health of the crew, or safety, of the vessel, or would not be in a fit condition from pestilential effluvia, or otherwise, to be carried on, it then was the duty of the master to sell the goods for the benefit of whom it might concern.
 

 The cargo -being in a perishable condition, the extent of the repairs, or difficulty of procuring, another • vessel, and consequent delay attending the same, are material,considerations influencing his judgment in deciding upon the necessity of a sale ; for it would be unreasonable' to require him to subject his owner to this expense, when, at the same time, a strong probability'existed that the cargo would not be in a condition to be reshipped. 18 Johns. 208; 6 Cow. 270; 1 Bing. N. C. 526; 3 ib. 266; 3 Brod. & Bing. 97; S. C. 6 Moore, 288; 6 Taunt. 383; 1 Holt, 48 ; 3 Kent’s Com. 212, 213; 2 Phillips, 331 et seq.
 

 The quantity and value of the portion saved are also material circumstances to he considered In exercising a sound discretion in respect to the extent of the repairs required to be made, or of expense in the procurement of another vessel, with a. view to the earning of salvage for the benefit of the underwriter on freight. The owner of the cargo is liable for any increased freight arising from the hire of another vessel; and linless it can be procured at an expense not exceeding the amount of the freight to be earned by competing, the voyage, the underwriter on freight has no right to insist upon this duty of the master. Beyond this, it becomes a question between him and the owner or underwriter of the cargo; 3 Kent’s Com. 212; Shipton
 
 v.
 
 Thornton, 9 Adolph. & Ellis, 314; Searle
 
 v.
 
 Scovel, 4 John's. Ch. 218; American Ins. Co.
 
 v.
 
 Center, 4 Wend. 45; 2 Phillips, 216.
 

 In respect to the second question, therefore, we direct it to be certified to the Circuit Court, if the jury find that, from the condition of that portion of the cargo sold at Nassau, it was for the interest of the insured and insurers of the cargo that it
 
 *610
 
 should have been so sold, and not transported to Matanzas, still, the -plaintiffs are not entitled to recover as for a total loss of freight, provided their own vessel could have been repaired in a reasonable time, and at a reasonable expense, so as to perform the voyage, or they could have procured another at Nassau, the port of distress, and have transshipped the portion sold in specie .to the port of destination.
 

 The third question is, assuming that the plaintiffs are entitled to recover, is the policy on the amount mentioned for one entire voyage round from Baltimore out, and home again; and are the defendants entitled to deduct from the amount insured the freight earned in the voyage from Baltimore to Rio upon the outward cargo.
 

 The policy provides, that the defendants, in consideration of $ 156.25, .agree to insure the plaintiffs, &c., on freight of the bark Margaret. Hugg, at and from Baltimore to Rio Janeiro and back to Havana or Matanzas, or a port iff the United States, &c., to the amount of $ 5,000 upon all kinds of lawful goods, &c., beginning the adventure upon the said freight ■from and immediately following the lading thereof aforesaid at Baltimore, and continuing the same until the said- goods, wares, and merchandise shall be safely landed at the port aforesaid.
 

 It is insisted, on the part of the defendants, that the voyage insured is one entire voyage from Baltimore out to Rio Janeiro, and then to Matanzas, or home; and that they are entitled tó a deduction of the freight earned on the outward cargo, from Baltimore to Rio.
 

 The court are of opinion, that, upon a true construction of the polity ihe insurance was upon every .successive cargo that, was taken on board, in the course of the voyage out and home, and is to be applied to the freight at risk at any time, whether on the outward or homeward passage. This was the construction given to these terms - in a freight policy in Davy
 
 v.
 
 Hallett, 3 Caines, 16, and The Columbian Ins. Co.
 
 v.
 
 Catlet, 12 Wheat. 383. The insurance was regarded as, in effect, covering freight upon separate voyages out and home, to the amount of the valuation; and in the former casé the payment of. double premium was deemed a pretty sure index to the intent of the parties .that the policy should attach on the outward or homeward freight according to events, and was tó bé valid and operative as long as there was aliment to keep it alive. All the considerations urged in. favor of this construction in the cases referred to- apply with equal force to the policy in question.
 

 The-cíóurt direct, therefore, that it be certified to the Circuit
 
 *611
 
 Court, that, assuming the plaintiffs are entitled to recover, the defendants .are not entitled to deduct from the insured the freight earned on the voyage' from Baltimore to Rio upon the outward cargo, as the policy is not for one entire voyage" round from Baltimore out, and home.
 

 Order.
 

 .
 
 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and on the points and questions on which the judges óf the said Circuit Court were opposed in opinion, and which were certified to this court for its opinion agreeably to the act.of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is .the ■opinion of this court, — 1st. That, if the jury find that the jerked beef was-a perishable article within the meaning of the policy, the defendants are' not liable as for a total loss of the freight, unless it appears that there was a destruction in specie of the entire cargo, so that it had lost its original character at Nassau, the port of distress ; or that a" total destruction would have been inevitable from the. damage received, if it had been resliipped before it could have arrived at Matanzas, the port of destination. 2d. If the jury find, that, from the condition of that portion of the cargo sold at Nassau, it was for the interest of the insured and insurers of the cargo, that it should have been so sold, and not transported to Matanzas, still, that the plaintiffs are not entitled to recover as for a total loss of freight, provided their own vessel could have been repaired in a reasonable time, and at a reasonable expense, so as to perform the voyage, or they could have procured another at Nassau, the port of distress, and have transshipped the portion sold in specie to the port of destination. And 3d. That, assuming the plaintiffs are entitled to recover, the defendants are not entitled to deduct from the insured the freight .earned on the voyage from-Baltimore to Rio upon the outward cargo, as the policy is' not for one entire voyage round from Baltimore out, and homé. Whereupon, it is now here-ordered and adjudged, that it be so certified to the said Circuit Court.