## WILLIAMS *versus* KENNEBEC MUTUAL INSURANCE COMPANY.

If a perishable article, or any part of it, shipped by sea, arrives *in specie*, at its port of destination, or can, by the exercise of reasonable care and diligence, be carried there in that condition, although when there it may be worthless, the insurers cannot be charged for a total loss.

If, by reason of the perils insured against, no part of it can be carried to the port of destination, in specie, the loss is total.

In such a case, an abandonment was held not to be necessary, though a portion of the article was in such condition as to be sold by the master for a sum certain, at the port of disaster.

Where there is such a total loss of the cargo, the insured is entitled to recover, as for a total loss of the freight.

ASSUMPSIT upon a policy of insurance, whereby $2500 was insured upon the cargo and $300 upon the freight of a schooner on a voyage from Gardiner to a port in the Chesa-

peake. The plaintiff claimed for a total loss of a quantity of potatoes, being that part of the cargo covered by the policy.

Notice of the loss was duly given to the defendants, and a demand made as for a total loss. But there was no abandonment.

The history and character of the disaster were given by a witness for the plaintiff. The substance of his testimony is presented in the opinion of the court.

Upon that testimony, and upon notarial copies of the protest and survey, so far as admissible in evidence, the case was submitted to the decision of the court.

*Benjamin A. G. Fuller*, for the plaintiff.

I. The evidence fully establishes the fact that the loss was occasioned by the perils of the seas. " *Proxima causa non remota spectatur.*"

II. This was a total loss, for which the insurers are liable, because : —

1. No portion ever reached the port of destination, nor under the circumstances was it the master's duty to forward them. *Narcasdier* v. *Cheshire Ins. Co.*, 8 Cranch ; *Dyson* v. *Rowcroft*, 3 B. & C. 474 ; *Roux* v. *Salvador*, 3 Brigh. R. 266.

2. It is well settled, that where the voyage is broken up by the destruction of the vessel, and it would not be the master's duty to forward, there would be a total loss of a perishable cargo, though existing in specie. *Poole* v. *Insurance Co.*, 14 Conn. 47 ; *Robinson* v. *Insurance Co.*, 3 Sum. 220 ; *Murray* v. *Hatch*, 6 Mass. 475 ; *Parry* v. *Aberdeen*, 9 B. & C. 411 ; *Treadwell* v. *Ins. Co.*, 6 Cowen, 270 ; 14 Johns. 138.

How much stronger, where the voyage is broken up by the perils of the sea, rendering the cargo of no value at an intermediate port, and of course of no value at the port of destination, if forwarded.

The true rule is that, when the goods would be of no value, if forwarded to the port of discharge, and the damage occurs by the perils insured against, the insurers will be liable for a total loss.

III. A total loss is where the goods lose their whole value by the perils insured against, whether fire or shipwreck. What difference does it make to either party, if the value is gone, whether the article exists or not?

IV. It has been settled, that it is a total loss of a perishable cargo, where the value is lost to the insured, even though part of it reached its port of destination. *Williams* v. *Cole*, 4 Shepl. 207; *Hugg* v. *Augusta Ins. Co.*, 7 Howard, 595, and in cases above cited.

*Allen*, for the defendants.

I. The loss was not from any peril insured against, but from inherent cause of decay in the potatoes. Can the court say it was from sea perils? They would not keep in our cellars. The world knows of the modern disease in the potatoe. But if occasioned by leakage, defendants are not liable. Here was not even a total loss of a part of a thing. All was saved though damaged. Benecke, 407; Abbott, 2d Am. Ed. 283 to 325. The potatoes might have been carried forward. There was not a total loss, for enough were sold to bring $192.

For plaintiff to recover, there must be of memorandum articles, an *actual* total loss. The rules generally applicable to losses do not apply to memorandum articles. 1 Johnson's Cases, 196; 3 Caine's, 108; 12 Johns. 107.

II. The schooner ought, after repairing, to have gone to the Chesapeake. She was prevented only because there were higher freights elsewhere. She was repaired and loaded in two weeks. The delay therefore was no ground of claim.

There was no abandonment; notice of loss is not equivalent.

The reason of the distinction between perishable and other articles is, to avoid the necessity of determining how much of the loss has arisen from inherent decay, and how much from the perils of the sea. For plaintiff to recover, would unsettle this most salutary principle.

There is no ground to recover for the loss of freight.

The vessel could and ought to have carried the freight by proceeding on the voyage.    1 Johns. 225 ; 3 Johns. 321.

Reliance seems to be placed upon the decision, *Hugg* v. *Augusta Insurance and Banking Co.*, 7 Howard, 595.    But that case widely differs from this.

1. The policy was on the freight only, not on the cargo.

2. The bark Margaret Hugg was twice stranded, with seven feet of water in her hold.  The schooner never stranded.

3. The cargo of the Hugg was forbidden to be landed by the board of health, except 150 tons, and that was ordered to be removed.

4. The cargo of the Hugg was not sold for any thing.

5. " The M. Hugg could not be repaired at that port, so as to have carried on the cargo."   " She was only repaired sufficiently to bring her home in ballast."

6. " No other vessel could be procured to forward on the remaining cargo, even if it had been in a ·condition to be shipped."

7. The law, as stated in pages 605 and 606, is in accordance with our views, so for as the same is applicable to the case at bar.

*Evans*, for the plaintiff, in reply.

Shepley, C. J. — This suit is upon a policy of insurance, by which the company insured on account of whom it might concern, payable to the plaintiff, $2500 on the cargo, and $300 on the freight of the schooner Yucatan, from Gardiner to a port of discharge in the Chesapeake.   The policy contained the usual clause, providing, that the company should not be liable for any partial loss, for goods esteemed to be perishable in their own nature.

The principal part of the cargo consisted of potatoes, a perishable article.   The case is submitted · for decision by the court, upon the testimony introduced.

The only witness examined testifies, among other statements, that the vessel sailed from Augusta, bound to Baltimore, on the 17th or 18th day of November, 1846 ; that the cargo was principally potatoes ; that on the 23d day of that month,

a violent gale commenced; that it was very severe; that for
a number of days they ran under bare poles, having no sails
set; that the gale continued twenty-nine days; that the deck
load was swept off, the foresail was gone, the flying jib gone,
the mainsail and jib chafed very much, so they could not be
of much use; that the sea broke over the vessel a great deal;
that in the first of the gale she did not leak any; in a few
days after she began to leak; that the sea struck her on the
side of the house upon deck, and let the water into the cabin,
and it leaked through the cabin floor, upon the cargo below;
that she strained about her deck, and leaked badly; that the
gale continued, until they were driven across the gulf stream
and into the trade winds; that there were eight or ten days
during the gale, when they dared not show their heads above
the companion-way, more than two or three times; that he
got out then, lashed himself to the pumps and pumped her
off, and there was considerable water in the hold; that after
the gale abated, they got the pieces of sails together, and tried
to get to their port of destination, and found they could not;
then tried to get to Savannah or Charleston and could not
fetch either; that they then ran for Key West, where they
arrived thirty-nine days out. That while running for Key
West, they took off the after hatches, and one of the men
jumped down upon the potatoes and sunk in up to his knees;
that there was a bad smell in the cabin; that there were a few
of the potatoes on the top, that looked rather bright. That after
their arrival at Key West the cargo was examined by the cap-
tain, and the potatoes were sold at auction the next day after
their arrival for $192. That a few of them, about twenty
bushels, were picked off the top and put on the wharf, and
some of these were sold by the purchaser, four or five baskets
full were carried away, but were mostly, if not all, brought
back and thrown into the dock as unfit for use; those in the
hold were also all pitched overboard; a few on the top looked
bright, but all under them was "mush." That the ordinary
length of a voyage from the Kennebec river to Baltimore was
twelve or fourteen days; and from fourteen to fifteen days

from Key West to Baltimore.   That the planks on the bows of the vessel were split, so that there was a hole, when they got into Key West.   That they laid there and repaired about a fortnight and loaded again and proceeded on another voyage. That the potatoes began to decay first between the main hatch and the foremast, where the vessel strained, and under the cabin ; began at the bottom and rotted upwards, as he judged from appearances, when he examined them at Key West ; that they decayed by the salt water ; when they got into the trade winds, they were so far rotted, that nothing could save them ; a few of them on the top did not look as though they were all decayed.

A notarial copy of the protest, and of a survey upon the vessel and cargo, at Key West, are presented as evidence, so far as legally admissible.   These can only be received to contradict and discredit the testimony of those, who have subscribed them.   *Senat* v. *Porter*, 7 T. R. 158.

The witness subscribed the protest, which does not mention many matters stated by the witness, while it does not appear to contain any thing materially at variance with his testimony.   It does not mention, that the vessel leaked, or that they made use of her pumps, while it does state, that the sea was at one time breaking into the vessel, with the most fearful violence.   The omission of her leakage, and that her pumps were used, may, perhaps, be accounted for, from the consideration, that they were occurrences of a kind so common, and so little suited to occasion, or to relieve them from imminent peril, as not to be particularly noticed, when the protest was extended.   A leakage, which would not be dangerous to the safety of the vessel, and which might be destructive to a cargo of potatoes, might, perhaps, be overlooked in a protest, containing accounts of disasters much more dangerous to the safety of the vessel.

The court does not find itself at liberty to discredit the essential facts stated in the testimony of the witness, and it must proceed to apply the law to the state of facts thus disclosed.

The plaintiff can recover the insurance made upon the cargo only upon proof of an actual total loss. But there may be a total loss of cargo without an actual annihilation of it, and when something is obtained from it in the nature of salvage. What constitutes a total loss of perishable articles has long been the subject of much discussion and of some difference of opinion. These differences may, perhaps, be considered as substantially put at rest in England by the case of *Roux* v. *Salvador*, first decided after two arguments by the Court of Common Pleas, and finally upon error brought in the Exchequer Chamber. 1 Bing. N. C. 526 and 3 Bing. N. C. 266. It may not be too much to hope, that the question may be permitted to rest in this country upon the decision in the case of *Hugg* v. *Augusta Insurance & Banking Company*, 7 Howard, 595. The doctrines finally asserted in these two cases, after an examination of the cases formerly decided by different tribunals, are substantially the same; and they may well be received as productive of greater uniformity in the decision of the commercial questions involved in them, than can be expected from a refusal to adopt them.

In the former of these cases, Lord Abinger, speaking of the memorandum clause of a policy, observes, " It has no application to a total loss or to the principle, on which a total loss is to be ascertained." " The argument rests upon the position, that if at the termination of the risk the goods remain in specie, however damaged, there is not a total loss. Now this position may be just, if by the termination of the risk is meant the arrival of the goods at their place of destination, according to the terms of the policy. But there is a fallacy in applying those words to the termination of the adventure before that period, by a peril of the sea. The object of the policy is to obtain an indemnity for any loss, that the assured may sustain by the goods being prevented by the perils of the sea from arriving in safety at the port of their destination." " But if the goods once damaged by the perils of the sea, and necessarily landed before the termination of the voyage, are by reason of that damage in such a state, though the species

be not utterly destroyed, that they cannot with safetey be re-shipped into the same or another vessel; if it be certain, that before the termination of the original voyage, the species itself would disappear, and the goods assume a new form losing all their original character; if though imperishable they are in the hands of strangers, not under the control of the as-sured ; if by any circumstance, over which he has no control, they can never or within no assignable period be brought to their original destination ; in any of these cases, the circumstan-ces of their existing in specie at that forced termination of the risk, is of no importance.    The loss is in its nature total to him, who has no means of recovering his goods, whether his inability arises from their annihilation or from any other insu-perable obstacle."

These positions were received with approbation in the case of *Hugg* v. *Augusta Ins. Co.*    In the opinion, it is said to be well settled, that " so long as the goods have not lost their original character but remain in specie, and in that condition are capable of being shipped to the destined port, there cannot be a total loss of the article, whatever may be the extent of the damage."    " The rule it will be observed, as we have stated it, contemplates the arrival of the goods, or some part of them, in specie at the port of delivery, or that they were capable of being shipped to that port in specie.    And hence, if the commodity be damaged, so that it would not be al-lowed to remain on board consistently with the health of the crew, or safety of the vessel, or if permission be refused to land the same, by the public authorities, at the port of distress, for fear of disease, and for these and like causes should from necessity be destroyed by being thrown overboard, notwith-standing the article exists in specie and might have been carried on in that condition, there would still be a total loss within the policy.    In the cases supposed, it is as effectually destroyed by a peril insured against, as if it had gone to the bottom of the sea from the wreck of the ship.    The same result follows also, if the goods be so much damaged as to be incapable of reaching the port of destination in their original character."

The doctrines respecting perishable articles may be thus briefly stated.

If the article or any part of it arrives at the port of destination in specie, or can, with the exercise of reasonable diligence and care, be carried there in that condition, although it may be worthless there, there can be no total loss.

If, by reason of the perils insured against, no part of it can be carried to the port of destination in specie, the loss is total.

By the application of these rules the rights of the parties must be decided.

When the potatoes arrived at the port of distress, all but a few on the top were greatly injured by sea-water, or, to use the word of the witness, were "mush." He states, that they were so far rotted before that time, that nothing could save them. If any attempt had been made to carry them in the same or in another vessel to the port of destination, there can be no reasonable doubt, that no one of them would have arrived there in specie or in an unchanged state or form. In the state, in which they then were, there is little reason to conclude, that they could have been allowed to remain on board consistently with the health of the crew, so long, as would be necessary for their conveyance to the port of destination. The probability is strong, that they never would have arrived there in any condition.

It is insisted, however, that the plaintiff, even on this view of the case, cannot recover, because the potatoes appear to have been sold for $1.92, and there was no abandonment.

In the case of *Roux* v. *Salvador*, the Court of Common Pleas decided, that the insured could not recover, because he had made no abandonment, and not because the loss was not considered to be total.

The necessity of an abandonment was elaborately examined in the Exchequer Chamber, and the decision was, that it was not required to entitle the insured to recover. That no abandonment is necessary, where there is a total loss of the subject matter insured. The rule as collected from all the decided cases, is stated by Phillips to be, " where the deduc-

tion from the amount of a total loss, is not the mere credit of a sum certain, but the remains of the property, that is specifically the subject of the insurance, or rights that may pass by assignment, an abandonment is necessary to entitle the assured to recover for a total loss.   2 Phil. on Ins. 240.

In this case, the deduction from the amount to be recovered for a total loss, is a sum certain, being the amount received for a sale of the potatoes.   After that sale, there was nothing left to be abandoned but the sum so received, and that the law will dispose of without requiring an abandonment.   The plaintiff will therefore be entitled to recover as for a total loss of the cargo insured.

He also claims to recover, as for a total loss of the freight insured.

The insurer of freight engages, that the owner of the vessel shall not, by the perils insured against, be prevented from earning freight, by a performance of the voyage.   If, therefore, the owner by reason of such perils cannot perform the voyage, and deliver the cargo at the port of destination, he will be entitled to recover the amount insured.   This may happen on account of the loss of the vessel, and the inability to procure another, or on account of the total loss of the cargo.

If he can perform the voyage, and deliver the cargo or some part of it, in that or some other vessel, although when delivered the cargo may be valueless, he will not be entitled to recover.   *Griswold* v. *The New York Ins. Co.* 3 Johns. 321 ; *Salters* v. *The Ocean Ins. Co.* 12 Johns. 107 ; *Clark* v. *Mass. Fire and Marine Ins. Co.* 2 Pick. 104; *Hugg* v. *Augusta Ins. and Banking Co.* 7 How. 595.

If the expense of sending the cargo on to the port of destination by another vessel, will exceed a moiety of the stipulated freight, the insured may abandon, and then recover for a total loss.   *Whitney* v. *The New York Firemen Ins. Co.* 18 Johns. 208 ; *American Ins. Co.* v. *Center,* 4 Wend. 54.

In the case of *Hugg* v. *Augusta Ins. Co.,* the insurance was upon freight.   The case was presented on a difference of

opinion between the Judges of the Circuit Court upon certain questions.

The first question presented the inquiry, when the article insured is perishable, "are the defendants liable as for a total loss of freight, unless the entire cargo was totally destroyed, so that no part of it would have been carried to the port of destination, even in a deteriorated and valueless condition?"

The certificate directed to be sent in answer to this question was, that in case the jury should find the article to be perishable, "the defendants are not liable as for a total loss of the freight, unless it appears, that there was a destruction in specie of the entire cargo, so that it had lost its original character at Nassau, the port of distress; or that a total destruction would have been inevitable from the damage received, if it had been reshipped, before it could have arrived at Matanzas, the port of destination."

The total destruction named in the latter clause evidently means such a total destruction as was named in the former clause, a total destruction in specie, that would occasion a total loss. As the conclusion has already been stated, that such a total destruction, as would have been a total loss, must inevitably have happened, before the potatoes could have been carried to the port of destination, the freight will be lost by a total loss of the cargo, before it could have arrived, and the voyage have been performed. The plaintiff will therefore be entitled to recover as for a total loss of the freight insured.

*Defendants defaulted and an assessor appointed.*