WILLIAM ROBINSON, Trustee, *v.* WILLIAM K. DAY.

If, in consequence of the *laches* of the holder, the endorser of negotiable paper be discharged, the holder cannot recover upon a subsequent promise, without showing that it was made with knowledge of *laches*. Yet, where the promise to pay the debt is given in the form of a new note, it is *primâ facie* evidence that there was no negligence by which the endorser was discharged from his obligation on the paper which he thus renews.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *J. L. Mathewson*, for plaintiff. *L. Madison Day* and *Samuel R. Walker*, for defendant. By the court:

SLIDELL, J. This is an action, brought in 1850, by the plaintiff, as trustee of the Commercial Bank of Natchez, upon a note of the following tenor:

"$3007 52. Natchez, May 18, 1843. Twelve months after the fifteenth day of May, 1843, I promise to pay, without defalcation, to the Commercial Bank of Natchez, or order, for value received, three thousand and seven dollars and fifty-two cents, negotiable and payable at the Commercial Bank of Natchez.

"Renewable if required. WM. K. DAY."

The defendant pleaded a general denial and the prescription of five years. He also alleged that, in 1840, the bank became the holder of a note signed by

ROBINSON
v.
DAY.

one *Beaumont*, and endorsed by the firm of *Day* and *Caldwell*. That, as endorser of that note, he was entitled to legal notice of protest; that no such notice was given him; and that in consequence of the failure to give him notice and other *laches* of the holder, he was discharged. That when he gave the present note, in settlement of the other, he was ignorant of his discharge.

There was judgment for the plaintiff in the court below, and the defendant has appealed.

Both parties have assumed, that the instrument is subject to the prescription of five years, established by art. 3505 C. C. and have argued the case, so far as prescription is involved, upon the question, whether an interruption of prescription has been made out.

To prove an interruption, the plaintiff relies on two letters written by the defendant to the plaintiff, both bearing date in May, 1848. One of these letters is not, perhaps, sufficiently definite, taken by itself, to identify the note spoken of with that in the suit. Unaided by other evidence, it leaves the mind in doubt whether it applied to this note, or the note endorsed by the defendant. The second letter, however, is sufficiently explicit on this score, "a note of mine due to the Commercial Bank." Any looseness of phraseology in that portion of the letter which speaks of its origin, is satisfactorily explained by the context, coupled with the defendant's answer in the cause, and the testimony of the cashier.

But, it is said that the letter is not such an acknowledgment as is sufficient to interrupt prescription, because it asserts again and again his inability to pay any thing, and does not, in express terms, acknowledge a liability. This remark about the contents of the letter is true. But the whole tenor of the letter is pregnant with inferences of the conviction, in the writer's own mind, of his liability for the debt, and that judgment would unavoidably go against him if he should be sued. Its scope and purpose seems to be, to represent to his creditor the hardship of pressing him for a liability originating in another's default, and the ruin of his credit and business, if the bank should take a judgment and execution. It is, in substance, an earnest appeal to the mercy of the creditor; a prayer for indulgence, inconsistent with the idea of an absence of liability. " My object in writing to you is, that I think you have been misinformed as to my capabilities to pay that claim." " I assure you it will be hard enough for me to pay that note when I get able, let alone being troubled for it now when it keeps me kicking to support my family." "Very few would give me credit if they knew there was a judgment against me." "I have a large family to support." "If, after what I have said, you still feel it your duty to *bring suit*, I shall have to submit to my fate with the best grace I can, but it will be very hard on my family." "If you do bring suit it will turn out as I have stated, and will ruin my credit; and I do not say this to prevent you from bringing suit, but I do not want to have my credit ruined." "Please write me as soon as possible."

This letter commences by referring to another letter written to *Robinson*, on the previous Saturday. In that letter he states, that the plaintiff's attorney had called on him to ascertain if he could do any thing towards paying "a note due the Commercial Bank, of which you have the control." He states his inability to pay it; deprecates suit which the attorney threatened, and asks the plaintiff to wait until he writes again. Its tone is like that of the other letter.

We are of opinion, then, that these letters clearly contain, if not an express. at all events a tacit acknowledgment of indebtedness upon the note signed by

the defendant, and an entreaty to the plaintiff not to sue. The first letter also requests the plaintiff to delay his suit until he can write again.

To treat these letters as not involving an interruption of prescription, would be to enable the defendant to work out an injustice by his own acts. For the entreaty of the defendant, coupled with the tacit acknowledgment of the plaintiff's right, and the declaration of the writer, that a suit would injure him without benefitting the creditor, may well be considered as the inducement which led the plaintiff to postpone his action. It is just to consider him as having relied on the implied acknowledgment in doing so, and it would be inequitable to deprive him now of its protection.

In arriving at this conclusion, we have left out of view the testimony of the plaintiff's attorney of record, which the defendant insists ought not to be heeded, in consequence of the professional relations in which he stood to the creditor, and his not having withdrawn from the prosecution of the suit before he offered himself as a witness in the cause. See *Succession of Harkins*, 2d Ann. 923.

It is said that, in consequence of the failure to protest the *Beaumont* note and notify the defendant as endorser, the note given by the defendant, and upon which he is now sued, is not obligatory. The argument assumes that there was a failure to protest and notify. This is not proved. We have the testimony of the notary, who swears that the note was duly protested on the day of its maturity, and that a written notice of the protest was given to the defendant's partner, personally, the next morning. On his cross-examination, the notary answered : "I have no distinct recollection as to the facts above stated, in relation to the particular note inquired about, but I have a copy of the record of my proceedings in the case of the demand, refusal of payment, and protest of the above-mentioned note, by reference to which my memory, in relation to the facts above stated, is refreshed." No exception was taken to the introduction of this testimony, upon any of the grounds stated in the plaintiff's brief; and it may, therefore, be considered as before us for what it is worth. [f] That, however, is little. For it appears from the testimony, that the officer in question was so exceedingly careless and unfaithful in the discharge of his notarial duties, that his conduct has been the subject of comment in Mississippi, (7 How. 609,) and the district judge properly says : " I feel disposed to attach little weight either to the certificate of the notary, or his statements about his records. They leave the matter uncertain, but do not show that no notice was sent." We leave this testimony out of view ; and thus the case stands, without any express proof of notice or protest. But it appears that a few months after the maturity of the *Beaumont* note, *Day* was sued upon it, as endorser, in Mississippi. If there had been any ground for defence, he would naturally have raised it then. If the protest was irregular, he or his attorney would naturally have gone to the notary's office and looked into the matter. If he had received no notice, that being a matter within his own knowledge would, we may reasonably suppose, have been pleaded. But, instead of anything of this kind being done, it is proved by the cashier of the bank that the Mississippi suit was not tried, but was dismissed, in May, 1843, upon the defendant's giving his own note for the amount.

No failure to protest or notify being shown, the promise to pay the debt, given in the form of this new note, must be considered as *primâ facie* evidence that there was no *laches*. See *Lundi* v. *Robertson*, 7 East. 236. *Gibbon* v. *Coggan*, 2 Camp. 188. *Pierson* v. *Hooker*, 3 John, 68. *Patterson* v. *Beecher*, 6 Moore. 9 ; Chitty 535. *Tebbetts* v. *Dowd*, 23 Wendell 381, 387. *Robbins* v. *Pinckard*, 5 Smedes and M. 51. This case must not be confounded with that class of

Robinson
*v.*
Day.

cases of which there are numerous examples in the books, where the holder of negotiable paper has been guilty of *laches*, and that fact appears on the trial. For then the holder cannot recover on a subsequent promise, without showing that the promise was made with the knowledge of the *laches*. See the cases cited 'by Cowen, J., in *Tebbetts* v. *Dowd* ;' *New Orleans and Carrollton Railroad Company* v. *Mills*, 2d Ann. 824.

Judgment affirmed, with costs.

Defendant's counsel applied for a rehearing.

The presumption arising, then, from the execution of the note in suit, is but secondary evidence, at best, of protest. For it is laid down in the books that: "Where higher evidence is shown to exist, all other is secondary." "In such cases mere presumptive *primà facie* or circumstantial evidence is secondary." Cow. and Hill, note 325, p. 423.

And evidence which is secondary in its nature, cannot be received so long as the direct or primary evidence can be had, or is shown to be within the reach of the party. 1 Gr. Ev. sec. 82, and last note to sec. 84. 1 Pick. R. 375. Cow. and Hill, note 414, p. 540.

"Indeed, the rule is general. You shall not be permitted to grope in the twilight of circumstantial evidence when the broad daylight of direct proof is attainable." Cow. and Hill, note 325, p. 424.

And so it has been held by Judge Story, that where it was proved a copy of a note existed, the party must prove it by the copy, and cannot rely on other evidence. 2 Mason, 468.

"For the best evidence of which the nature of the case is susceptible, must always be given." 1 Phil. Ev. 217. Gr. Ev. sec. 82.

Now the direct or primary evidence, which is that of the notary, having been introduced by the plaintiff, and which is proved to be wholly unworthy of credit, the secondary or presumptive evidence arising from the execution of the note, would seem to be clearly insufficient, according to the foregoing authorities. At all events, the presumption is entirely destroyed and overcome by the *laches* which are shown on the part of the holder, in employing a notary, whose acts, as well as his evidence, in relation to the same. are unworthy of any credit whatever.

This, we think, makes it incumbent on the plaintiff to prove, either that the defendant was duly charged, or that he gave the note in suit with a full knowledge of the *laches* of the bank.

Because we have alleged that the *Beaumont* note was not protested, and that defendant gave the note sued on without a knowledge that he had not been duly charged as endorser, and as the evidence in the record shows it to be within the power of the party to prove a protest, had one been properly made, as well as that it is exclusively in his power to prove the note was executed with a knowledge of the facts, had such been the case.

For, one who alleges error, is only bound to prove the same when it is not shown the evidence of the same is exclusively within the power of his adversary. 11 L. R. 80. 7 R. R. 418.

The general rule is, that he who affirms must prove; but where the affirmative involves a negative, the proof must come from the other side. *Marc* v. *Church Wardens*, 8 N. S. 257.

And, moreover, this court has held, that where it is not shown whether any demand was made on the drawee, and the drawer supposing himself liable and promised to pay the draft, it will be presumed there was no demand, and that the promise was made in error, and so not binding. 11 L. R. 17.

How much more then should it be presumed in this case, (and the facts proved fully justify the presumption,) that defendant was not duly charged, and that the note sued on was given in error At all events, we feel fully warranted in saying, the presumption of a protest, arising from the execution of the note in suit, is fully rebutted by the opposite presumption arising from the evidence in the case. It is therefore incumbent on plaintiff to prove protest, or that defendant gave the note in question with a full knowledge that he had not been properly notified

2. The next and last ground on which we solicit a re-hearing, relates to the question of prescription.

The opinion of the court proceeds on the ground, that the force and effect of the letters of defendant, are to be determined by the law of Louisiana. In this we would most respectfully suggest there is error, for which the counsel, and not the court, are responsible, as the same was overlooked in the argument.

For, it is now the conceded doctrine of this, as well as of other enlightened courts, that contracts, as to their nature, validity, obligation and interpretation, are governed by the *Lex loci contractus*, unless a different place is stipulated for their performance. Story's Conf. L. sec. 248–280.

Now, the letters of defendant would seem to be clearly within the reach of this principle, since an interruption or renunciation of prescription is in the nature of renewal of an obligation. 9 R. R. 313. 1 R. R. 335–6.

The note sued on was executed, as well as payable, at Natchez, and the letters were addressed to *Robertson* at that place. Their nature and effect, then, must be determined by the common law which prevails there, and of which this court will take notice.

It has been expressly held in Massachusetts, that where a proposition is made by a letter written in one State, and sent to another by mail, the latter is the place where the proposition is made, and not the place where the letter was written. 3 Met. Rep. 207.

So it has been held, that where plaintiff wrote by mail to defendants, inquiring on what terms they would insure his vessel, and defendants replied at a certain rate, but by mail of next day retracted. Plaintiff, before he did or could receive the second letter retracting, sent on an acceptance. *Held :* no contract had been made. 1 Pick. 278. See 10 Ib. 324.

These decisions evidently proceed on the ground, that the offers are to be considered as made at the place where the letters are addressed, and not at the place where they were written.

The same rule must apply to the letters of defendant, for there was no admission made until the receipt of the letters by *Robertson.*

The mail in the one case, and the boat in the other, were but the bailees of defendant, and the letters are, therefore, regarded as still in his possession, until actual delivery at the place of destination; and this, more especially, as the rules prescribed by the Postmaster General expressly authorize the writer to withdraw a letter, any time, before delivered to the person to whom addressed. Regulations Post Offices, ed. 1847: Chap. 24, Delivery of Letters; chap. 27, Letters Forwarded; chap. 28, Return of Letters.

In England and France a different rule is prescribed. A letter mailed there cannot be withdrawn. Hence, so far as the present point is concerned, the English and French authorities would be inapplicable.

The defendant, then, having the absolute control over his letters until an actual delivery at Natchez, his admissions as to their nature, obligation and effect, must be settled according to the law of that place.

This is a material distinction, and one, which if allowed to prevail, will fully sustain the plea of prescription, as the letters are wholly insufficient to avoid the plea according to the common law, if not by the civil law.

It is expressly laid down that it ought clearly to appear in all cases, that the acknowledgment relates to the identical debt which is sought to be recovered on the strength of such acknowledgment. 9 Cow. 678. 15 J. R. 511. Ang. Lim. 254–5, § 4.

And if effect can be given to the admissions, without referring them to the demand upon which the suit may have been brought, they ought not to be considered as referring to such demand. 3 Wend. 352. 6 Pet. 86. 21 Pick. R. 323.

Re-hearing refused.