WILLARD, Plaintiff in Error, v. THE MILLERS' & MANUFACTURERS' INSURANCE COMPANY, Defendant in Error.

1. Where a steamboat, whose freight list is insured against a total loss only, meets with a disaster upon the contemplated voyage, and by a peril insured against is rendered totally unable to transport the cargo, and can not be repaired in a reasonable time to transport the same, this will amount to a total loss of the freight within the meaning of the policy ; and that too although a *pro rata* freight should be received for the portion of the voyage completed at the time of the disaster.

2. In case of an insurance on freight "against a total loss only," to authorize an abandonment the loss must be an actual total loss, not a constructive or technical total loss.

*Error to St. Louis Court of Common Pleas.*

This was an action upon a policy of insurance. The defendant insured the plaintiff in the sum of $3000, upon the freight list of the steamboat Cataract on a voyage from St. Louis to New Orleans. The insurance was against a " total loss only." It was set up as a defence to the action that " the freight list of the said steamboat was not totally lost as stated in said petition ; on the contrary the defendant says that the said plaintiff received a large sum of money, to-wit, upwards of seven hundred and fifty dollars, as *pro rata* freight on the cargo and

passengers that were upon his boat on the occasion of the injuries mentioned and set forth in the petition, whereof upwards of four hundred and fifty dollars was on account of *pro rata* freight on a cargo for said voyage." After adducing in support of his cause of action the policy of insurance, plaintiff, as appears from the bill of exceptions, "gave evidence tending to show that he was the sole owner of the Cataract, and the person solely interested in the said policy at the time of the insurance and loss mentioned in the petition; and that her freight list and the fare of her passengers for the trip on which she was lost amounted to about $3000; that after leaving the port of St. Louis, on the voyage insured against, and after proceeding sixty miles upon her voyage toward New Orleans, said boat sustained an injury by the unavoidable perils of the river, by means of which the further prosecution of the voyage was rendered impossible; that her cargo could not be sent forward for any less rate of freight than the Cataract had agreed to take it; that said boat could not be repaired in time to prosecute said voyage. This was all the evidence on the part of the plaintiff." The bill of exceptions proceeds as follows: " The defendant offered evidence tending to show that the plaintiff received as *pro rata* freight for the trip insured by said policy of insurance the sum of $467; which was all the evidence offered by the defendant; and thereupon the court gave at the instance of defendant the following instructions: ' 1. If the jury believe from the evidence that the plaintiff received any part of the freight insured, then there was not a total loss of the freight list, and the plaintiff can not recover. 2. If the jury believe from the evidence that the plaintiff received from the shippers of the cargo of the Cataract, or on their account, or on account of any of them, the sum of $483, or thereabouts, as freight of the cargo or part of the cargo of the Cataract for the trip, commencing November 17, 1854, then there was not a total loss of the freight list, and the plaintiff can not recover.' "

Plaintiff thereupon took a non-suit, with leave to move to set

the same aside.    This motion having been made and overruled, the plaintiff brings the case to this court by writ of error.

*Hudson & Thomas*, for plaintiff in error.

I. There was a total loss of the subject insured within the legal acceptation of the term "total loss."   (4 Wend. 53.) It is not necessary in all cases of misfortune that the injury to the vessel should exceed one-half her value to justify an aban- donment; if she be disabled, and can not repair in a reasona- ble time, the master may abandon the freight list; and in some instances the vessel itself, as for a total loss.   (15 Wend. 532.)   The effect of the words " against a total loss only," in ordinary cases of insurance, means that the loss must be equal to one-half the value of the article or subject insured.   (6 Mass. 464.)   The instruction given was manifestly erroneous.

*T. T. Gantt*, for defendant in error.

I. The instructions given were correct.   (Hugg v. Augusta Ins. & Banking Co. 8 How. 595 ; 2 Phill. on Ins. § 1767 and cases there cited.)

Scott, Judge, delivered the opinion of the court.

From the cases to which reference has been made, one would come to the conclusion that the defence to this action is con- ceived in the idea that a total loss of freight can only exist, or can be said to have taken place, when the cargo is destroyed or in such a state that freight can not be earned in respect to it. This may be true as far as it goes ; but it is not the only event which will entitle the assured to an action on a policy against a total loss of freight.   Insurance of freight covers the risk of a loss of it by reason of a loss of either the ship by the perils insured against whereby it is prevented from transporting the cargo, or a loss of the goods by the perils insured against whereby the earning of freight by the transportation of them is prevented.   (1 Phill. 1142.)   Cases in reference to what constitutes a total loss of the cargo have no application to that now under consideration.   The claim of the plaintiff to a re-

covery for a total loss rests upon the breaking up of the voyage, whereby he was absolutely prevented from earning freight.

The policy on freight, covering both the vessel and cargo against the perils for which the insurance was effected, it is necessary that there should have been a total loss of the freight in order to warrant a recovery on the policy, it being only against a total loss. In the law of insurance, a total loss of the subject of an insurance is where, by the perils insured against, it is destroyed or so injured as to be of trifling or no value to the assured for the purposes and uses for which it was intended ; or is taken out of the possession and control of the assured, whereby he is deprived of it ; or where the voyage or adventure for which the insurance is made is otherwise broken up by the perils insured against. The interpretation given to the policy, by the instruction of the defendant, is, that if any the least amount of freight is earned, the underwriter is discharged and the assured has no right to recover, as the policy is only against a total loss. But this we conceive is not the meaning of the contract. If the cargo is lost, or if the vessel is totally disabled from performing the duty of transporting the cargo, and can not be repaired in a reasonable time to perform it, the contract, according to the construction given to it by the writers on the law of marine insurance, is violated, and the assured has a right to recover for a total loss. If the vessel is disabled, and the cargo remains, and freight is afterwards earned in respect to it, such freight does not affect the right of action, but is only considered in adjusting the amount of the loss. Phillips says that if the ship is rendered innavigable, and can not be repaired for the prosecution of the voyage, and another can be procured within a reasonable time and distance, and the master has means to procure such other at an expense materially less than the amount of the freight for the voyage, the underwriter on freight or profits is not liable to be prejudiced by the master's neglect to tranship, any more than the underwriter upon the cargo, and the loss will be adjusted as if the cargo had been transhipped and forwarded, and will be partial or total accord-

ing to the amount of the loss. (Phil. on Ins. § 1632.) This clearly shows that after the vessel is disabled, the freight that is or may be earned in respect to the cargo does not affect the right of action on the policy, but is regarded only in the adjustment of the loss. If, notwithstanding the disaster to the vessel, partial freight is earned, it will be allowed the underwriter; if the entire freight is earned, or might have been earned, the assured will recover nothing; for the contract of insurance being one of indemnity, if the assured has sustained no loss, or if he might have avoided the loss, he will not be entitled to recover any thing. In order to show that on a policy on freight against a total loss there may be a recovery notwithstanding there is salvage, we will refer to what was said by the court in the case of Murray v. Hatch, 6 Mass. 475, which was an action on a policy on freight against a total loss. The court says, " as to the distinction contended for by the defendant's counsel, and stated in the exceptions, of a constructively total and a physically total loss, intending by the latter a loss without any salvage, it is not warranted by any of the text writers upon the subject of marine insurance; a total loss with salvage is a case frequently mentioned and described; and indeed it is difficult to conceive of any event or peril provided against by the ordinary forms of insurance which does not admit the supposition of some salvage remotely possible at the least; as in the case of a ship foundering or burnt at sea, every possible chance of salvage is by no means excluded. But in the technical sense of the words " total loss," and for every beneficial purpose in which a contract of insurance can be employed, a ship foundered or burnt at sea, or wrecked or broken upon the land, so as to be past relief or repair, is specifically and as a vessel totally destroyed; and such an event is a total loss, and, when it has happened from a peril insured against it, is a loss for which the underwriter is liable, notwithstanding a salvage and a very considerable salvage remaining, and notwithstanding any restriction the policy may contain as being expressed to be an insurance against a total loss only, or as containing an excep-

tion or warranty on the part of the assured against average or partial losses."

As the bill of exceptions was only prepared with a view to raise the question involved in the instruction given by the court, we will not express an opinion on the plaintiff's case, as it was not got up with that view. However, as the cause will be remanded, we may as well give an opinion on some of the questions discussed, as they will recur on the trial hereafter to take place. The plaintiff is mistaken in supposing that on a policy on freight against a total loss only, a party is entitled to abandon for a technical total loss. The rule that there may be an abandonment for a technical total loss, has never been applied to a cargo consisting of memorandum articles. A memorandum article is one for whose loss the insurer is not liable, unless the loss is an actual total one. As the insurer indemnifies only against a total loss, it would be a clear perversion of his contract to make liable for a loss which was not really total but only so by construction. It would be taking from him the protection he intended by the restriction imposed on his undertaking. (Marcardier v. Ches. Ins. Co. 8 Cranch, 47.) To the same effect is Philips, who says an insurance against a total loss only, or with the exception of particular average, the two forms being equivalent, excludes a constructive total loss on account of damage to the article, &c. (2 Phil. § 1767 ; Hugg v. The Augusta Ins. & Banking Co. 7 How. 605.) It should be observed that the cases of the American Ins. Co. v. Center, 4 Wend. 47, and the American Ins. Co. v. Ogden, 15 Wend. 532, which seem to maintain a contrary doctrine, were on policies not limiting the loss to a total one only.

This case must turn on the question whether the voyage was broken up. What will be a breaking up of the voyage must depend on the circumstances of each case. Cases may be stated which will make the answer to the question a plain one. Others may occur which will admit of doubt. An accident, caused by one of the perils insured against, which merely causes a delay or retardation not going to the destruction of the con-

templated adventure, is not a good cause of abandonment so as to amount to a total loss. That the retardation may deteriorate the value of the cargo will not justify an abandonment as against the insurer of freight, for the shippers are bound to pay the full freight for the voyage if the cargo is carried to the port of destination; and specifically remains, notwithstanding at its arrival it is by reason of sea-damage utterly ruined. The contract of the ship-owner is to convey the cargo to the port of destination; but he by no means warrants the state in which it shall arrive, as it may be affected by the perils of the sea or other perils against which his contract does not bind him. So, if the retardation will not so affect the cargo as to make it incapable of earning freight, it can not be considered in the question whether there was a breaking up of the voyage in an action on a policy against a loss of freight. (Jordan v. Warren Ins. Co. 1 Story C. C. 354; 2 Phil. § 1767.)

Whether another vessel can be procured in a reasonable time to transport the cargo is, as we have seen, a consideration that does not affect the inquiry whether the voyage has been broken up by the perils insured against. That is a circumstance of importance only in adjusting the amount to be recovered, not in determining the right to an action.

Judge Ryland concurring, the judgment will be reversed and the cause remanded; Judge Leonard absent.