WILLARD, Respondent, v. MILLERS' AND MANUFACTURERS' INSURANCE COMPANY, Appellant.

1. Where the freight list of a steamboat on a proposed trip or voyage is insured against a total loss only, the policy will cover the freight pending at the time of loss, although some freight may have been previously earned by the delivery of goods at intermediate ports.
2. If a steamboat, whose freight list is insured against a total loss only, meets with a disaster upon the contemplated trip, and can not be repaired in a reasonable time to transport the cargo, and the master is unable to send the cargo forward to its place of destination for a sum less than the original freight, there will be a total loss on freight within the meaning of the policy.

*Appeal from St. Louis Court of Common Pleas.*

This case has heretofore been before the supreme court. (See 24 Mo. 561.) It was a suit on a policy of insurance against a "total loss only" on the freight list of the steam-

boat Cataract on a trip from St. Louis to New Orleans. The defence was that the loss was not total ; that *pro rata* freight had been received by the plaintiff. The boat descending the river struck a snag about one hundred and forty miles below St. Louis and was badly damaged. A large part of the cargo was put upon the bank, a part was sent forward to Cairo by another boat, and the boat returned to St. Louis with the remainder. A portion of the goods thus brought back was put up at auction by the agent of the underwriters, and out of the proceeds of the sale the agent handed over to the plaintiff between four hundred and five hundred dollars. This, it is claimed, was received as freight *pro rata*.

The court gave the following instructions, at the instance of plaintiff: "1. Even though the jury may believe that after the injury to the Cataract, plaintiff could have procured or did procure another boat to transport the said cargo to the port of destination, this fact constitutes no bar to his right to recover in this action. And if the jury find that by such injury to the Cataract, she was so injured and disabled that she could not pursue her said voyage, and could not with ordinary exertions have been repaired in a reasonable time, so as to pursue her voyage with said freight, this was a breaking up of said voyage. 2. If the jury find for the plaintiff, they will assess the damages which they believe from the evidence have been sustained, and they may find interest also on such amount from the time of the commencement of the suit."

The defendant asked the court to give the jury the following instructions, all of which the court refused: "1. That it is necessary, in order that there should be a recovery by the plaintiff on the policy in this action, that there should have been a total loss of freight. 2. If the plaintiff has received any sum by way of *pro rata* freight on the cargo for the voyage, he can not recover. 3. If the jury find that the plaintiff has received full freight on any part of the cargo for the whole voyage, he can not recover. 4. The receipt by the

plaintiff of any sum of money towards the freight list insured, for the voyage insured against, converts the loss from a total into a partial one; and if the loss were partial and not total, the plaintiff can not recover.   5. If the vessel containing the cargo of which the freight was insured could have been repaired\in time to resume and complete the voyage insured upon before the cargo would have been so deteriorated by the retardation or delay of the voyage as to render it incapable of earning freight, the plaintiff can not recover.   6. The cargo would not have been incapable of earning freight so long as it remained specifically the same, and of greater value than the sum to be paid as freight thereon.   7. The cargo would not be incapable of earning freight so long as any part thereof remained specifically the same, and of the same or greater value than the sum to be paid as freight thereon.   8. If the cargo, upon the injury to the Cataract, could have been transferred and sent forward to its destination for a less sum than the amount of freight for the whole voyage from St. Louis to New Orleans, but the master of the Cataract, from whatever cause, failed or neglected to send it forward, then he is not entitled to charge the underwriters as for a total loss of freight, and the jury must find for the defendant, even although they may find that according to the arrangement actually made for sending the cargo forward, a sum equal to or greater than the original freight was agreed to be paid to the boat taking the cargo from Devil's Island to New Orleans.   9. If the loss of freight sustained by the plaintiff has been partial only, and not total, the plaintiff can not recover."

*Gantt*, for appellant.

I. All idea of liability for merely partial loss was excluded by the policy.  It must be an actual total loss.  (24 Mo. 566 ; 8 Cranch, 47 ; 2 Phill. § 1766–7, 1756.)   The freight list of a vessel is an entire thing.  The failure to earn *any* freight is necessary to constitute a total loss of freight.   The

loss in the present case was only partial. (6 Taunt. 383; Marsh, 226; 3 Sumn. 221; 3 Johns. Cas. 93; 1 Johns. 205; 3 Johns. 321; 2 Pick. 104; 23 Pick. 405; 2 Phill. on Ins. § 1438-9, 1440, 1450, 1633-9, 1640-3, 1767; 2 Maule & S. 278, 371; 3 Caines, 108; 3 Sumn. 221; 7 East, 38; 2 Marsh. R. 432; 7 Taunt. 154; 3 Wash, C. C. 256; 8 Cranch, 39; 2 Louis. 432; 5 M. & S. 47; 16 East, 214; 3 Mas. 429; 1 Sto. 342; 14 Johns. 138; 9 Johns. 9; 2 Duer, 204; 24 Mo. 561.) If a vessel be damaged, but is repairable so as to be able to complete her voyage in a reasonable time and so earn freight, the master is bound to do this, and if he fail to do this the underwriter is discharged. The court erred in refusing the instructions asked.

*Hudson & Thomas,* for respondent.

I. The breaking up of the voyage amounted to a total loss on freight. (3 Phill. on Ins. § 1142, 1630, 1485; 3 Johns. Cas. 93.) The fact that some *pro rata* freight money was received does not affect the question of a total loss. It was in the nature of salvage. (2 Phill. on Ins. § 1630-3; 15 Mass. 345; 24 Mo. 561.)

NAPTON, Judge, delivered the opinion of the court.

This case was before this court in 1857 and the decision of the court is reported in 24 Mo. 561. Two of the present judges were not then on the bench, and it is proposed now to state the conclusions to which they have arrived upon the points presented by the record.

It is stated in Phillips on Insurance that " an indefinite detention of the ship, or one for so long a period as to break up the voyage, is a total loss of freight." The same author defines a partial loss of freight to be occasioned " by the loss of the ship after a part of the voyage is performed, which makes it necessary to hire another ship to carry on the cargo to the port of destination in order to earn freight;" and he

says further that " when freight *pro rata* is earned this is a case of partial loss." (§ 1440.)

If the voyage is entirely broken up by the loss of all the goods, or by the destruction of the vessel, or by its incapacity to perform the voyage occasioned by any of the perils insured against and the impracticability of sending the goods on in another vessel on such terms as would enable *pro rata* freight to be earned, the loss is total. Marshall, in his work on Insurance, says: If, by any accident or misfortune, the ship be prevented from proceeding on her voyage, and the voyage be thereby lost, this is a total loss, not only of the ship and freight, but also of the cargo, if no other ship can be procured to carry it to its port of destination." (2 Marsh. on Ins. 585.) In Manning vs. Neunham, 2 Campb. 624, a case since regarded as having gone too far in favor of the assured, Lord Mansfield is reported to have said: " If by the perils insured against the voyage be lost and gone, it is a total loss, otherwise not. The ship received an irreparable hurt, within the policy, which drove her back to Tortola, where only two ships could be had, both together not capable of taking the whole of the cargo on board. The voyage was so completely lost, that no ship could be got, and the insured were unable to send that part of the goods which they had purchased forward to England, and yet nobody bought but to send to England. *If the voyage could have been continued in another ship, there might have been freight pro rata.* But it was admitted that there was a total loss on the freight, because the ship could not perform her voyage, and the insured were not to wait till ships could be had."

In a work on insurance by Arnould, a total loss of freight is thus defined. " If the freight insured be the hire of a ship for an entire voyage, under the terms of a charter party, so that no freight is payable except on the arrival of that particular ship at the port of destination outward, or at the home port, then if such arrival of the ship be rendered impossible or hopeless, either by her foundering at sea, or being justi-

fiably sold as irreparable in the course of the voyage, this ought, on principle, to be an absolute total loss of freight, quite irrespective of all questions as to the state of the cargo. Where, on the other hand, the earning of the freight insured is not thus made to depend on the arrival of the ship under the charter party, but on the delivery of the goods according to the terms of the bill of lading, the chance of the ship's arrival would seem to be less important, as the criterion of the right to recover a total loss on freight without notice of abandonment, than the chance that the goods may be forwarded so as to earn freight by another ship; in such cases, accordingly, if, although the original ship be wholly destroyed or justifiably sold as irreparable, yet the cargo is preserved in such a state that it may be sent on, so as to earn freight, by a substituted ship, it would seem that the assured, in order to recover as for a total loss on freight, ought on principle to give notice of abandonment." (2 Arnould on Ins. 1043.)

We understand these authorities to maintain that where a part of the voyage has been performed and the master sends on the goods by another ship at a price less than the whole freight, then *freight pro rata* is earned and the loss is only a partial one; or where the shippers receive the goods at the place where the ship is disabled, paying *pro rata* freight, the loss is only a partial one. (Everth et al. v. Smith, 2 M. & S. 278; Hunt v. Royal Ex. Co. 5 M. & S. 47; McCarthy v. Abel, 5 East, 388.)

But it does not follow from these positions that the earning of any freight discharges a policy which protects against total loss only. If such a construction was necessary, it is plain that a clause of this kind in our river policies would make them perfectly useless as indemnities. There is hardly a boat engaged in the navigation of our western rivers but trades with a great many intermediate points or landings between the port from which she sets out to the port of ulti-mate destination; and if a delivery of a single package at

the first landing reached, with a receipt of the freight therefor, discharges the underwriters upon the principle that *pro rata* freight has been earned, the policy would be a mere fraud. But the true construction of such policies is, that they cover the freight pending at the time of the loss, and the loss is total or partial with reference to such freight only, without regard to freight that has been previously earned. So far as that is concerned, the policy has accomplished its purpose and is at an end. Such freights are no longer at risk and the insurers of course are no longer responsible for them, since they have been earned and paid. But the policy still attaches to the freight not earned. (2 Phillips on Ins. § 1499, 1647 ; Livingston v. Col. Ins. Co. 3 J. R. 49.)

The principal ground of defence in this case is, that there was *pro rata* freight earned, and consequently the loss was only a partial one, and an instruction was asked upon this point.

The only evidence upon which such an instruction could be based was the testimony of Capt. Eaton, who stated that he received a portion of the damaged goods brought back in the Cataract ; had them put up at auction, and from the proceeds handed over to Capt. Willard $487.35. Captain Eaton was the agent of the underwriters, and he understood that the money paid was for *pro rata* freight, and such also he believed to be the understanding of Capt. Willard.

It is very clear that no *pro rata* freight was earned by the Cataract ; for the delivery of the damaged goods at St. Louis, not to the shippers or consignees, but an agent of the board of underwriters, did not entitle the Cataract to any *pro rata* freight. There are cases in which goods may be retained after a disaster has occurred, and the carrier may insist on taking them on after time for repairs has elapsed, and refuse to deliver them up to the shippers or consignees without payment of *pro rata* freight, or in some cases without payment of the entire freight. But no case of this kind was made out or attempted to be proved at the trial. It was not pretended

that the Cataract was in a condition to insist on a retention of her freight, or that she could be repaired in time to finish her trip. On the contrary, the voyage was abandoned and broken up, and the Cataract did not leave the docks for several months after the accident. She brought back a portion of the damaged goods to St. Louis, where they were sold at auction, and from the proceeds of which the agent of the underwriters paid a portion to the plaintiff.

But can the underwriters, by such a payment, convert a total into a partial loss? The question is, what was the condition and responsibilities of the parties after the voyage was abandoned? Undoubtedly the plaintiff had a right to receive a part payment of his claim in satisfaction of his entire demand, and if his conduct could be so construed that would be another ground of defence. But no such defence was pretended. It is evident that Capt. Willard had no thought of relinquishing any portion of his claim against the underwriters by receiving the four hundred and eighty-seven dollars, whether he regarded it as *pro rata* freight or salvage. That no *pro rata* freight was due, is plain, and that the underwriters can not, by simply calling a payment made by them *pro rata* freight, make it such, is equally clear. The money was either for salvage or was a mere gratuity, and can the underwriters by a mere gratuitous payment to the assured, set up such payment as a bar to a larger sum, which without it would be clearly due? Here is a claim, we will assume, against the underwriters for a total loss, and *their agent* hands over to the assured a sum of money, which he calls *pro rata freight*, and this, it is urged, converts the total loss into a partial one. If this be so, it is always in the power of the insurer to give a character to the loss adapted to his own interest. Suppose this sum had not been paid, would the assured have any claim upon the underwriters for it as *pro rata* freight? Whether the money is paid or not paid, the claim is of the same character, and the case is not at all altered by the fact of payment or refusal to pay. The

question is, was any *pro rata* freight due or earned? and if that is answered in the negative, it matters not what payments have been made by the underwriters in determining the character of the loss.

Our conclusion is, that the instructions asked by the defendant on this point were abstractly correct, but had no application to the testimony, and their refusal could therefore produce no prejudice. The instructions, if given with the necessary explanations of the character and effect which the law would impart to the payment made by the defendant's agent, would have led to the same result.

Where nothing has been done towards earning freight by the goods being carried on in the same or another vessel, or by the shippers electing to receive them at an intermediate port in preference to having them delivered at the port of destination, there is nothing to abandon. The loss is total. (2 Phillips, § 1501; 4 Bingh. 388.)

The eighth instruction, in relation to the duty of the plaintiff in sending forward the goods, was properly refused, as there was no evidence to support it. The goods were sent forward in another boat, so many of them as were in a condition to be reshipped, but at a price which left nothing to the assured. There was no evidence that the goods could have been shipped upon better terms.

Under the instructions given, the jury found that the boat was disabled, by one of the perils insured against, from pursuing her voyage within any reasonable time. As the goods were actually sent on, (whether it was the duty of the insured or not to have done so,) and no *pro rata* freight was earned, we do not see that the refusal of the court to give the instructions asked could have changed the result. We shall therefore affirm the judgment. Judge Ewing concurs.